26043.  SOUTHERN  RAILWAY  COMPANY  *v.*  BLANTON.

DECIDED  JULY  16,  1937.  REHEARING  DENIED  JULY  26,  1937.

*Walter Matthews, E. S. Griffith, Maddox, Matthews & Owens,* for plaintiff in error.

*Arnold, Gambrell & Arnold,* contra.

PER CURIAM.  Mrs. Esther Blanton as administratrix of her deceased husband, Will Blanton (hereinafter referred to as the decedent), brought this action against Southern Railway Company, to recover damages for his homicide.  The petition is in two counts.  The questions for determination are (1) whether the judge erred in overruling general and special demurrers to the petition as amended, and (2) whether he erred in overruling the motion for new trial.

By paragraph, the material parts of the first count are substantially as follows: (3) On April 29, 1935, the decedent was working as a brakeman on the defendant's freight-train, both the decedent and the defendant being engaged in interstate commerce.  (4) At 11:20 a. m. on said date, while the decedent was engaged as a brakeman on a freight-train in Bremen, Haralson County, Georgia, he was struck, mashed, and fatally injured in

a collision between the train which he was assisting to operate and an automobile at a side-track crossing over the paved street leading from the schoolhouse to the railroad station, in manner hereinafter set out. (5) The main line of the defendant's railroad through said town runs east and west. The side-track runs almost parallel to the main track at that point, a distance of about one hundred yards north of the main track. (6) At said time the defendant was operating a train of two or three box-cars, and said train was being operated backward and was traveling in an easterly direction. (7) The paved street leading across said side-track runs north and south, and slopes from the north at a considerable grade. At the northwest corner of this intersection, about thirty feet from the pavement and adjacent to the railroad, was a warehouse fifteen or twenty feet in height, and north of the warehouse was a dirt road entering the paved road. About thirty yards northwest of said railroad crossing was a high embankment, and on this embankment were several houses. There were also other buildings and trees on each side of the railroad in the immediate vicinity, and the whole area in that section was thickly settled both with houses and industrial plants. It was a cloudy day, and the pavement was wet. (8) Said obstructions on the northwest corner were so grouped that the view of one approaching the crossing from a northerly direction along said street could not extend west on said track beyond the eastern corner of said warehouse until he reached a point within fifteen or twenty feet of said crossing. (9) There were also several bushes and vines between said warehouse and said road adjacent to said crossing, said vines and bushes extending from five to ten feet in height. (10) There were six members of said crew, the head brakeman, Blanton, the deceased, another brakeman, the flagman, the conductor, the engineer, and fireman. At said time only the engineer, fireman, and the deceased were operating the train, the others being at the time away from their posts of duty in the actual operation of the train, and several hundred yards from the point of collision. (11) As said train moved east along said side-track approaching said crossing, and when the end box-car backing up as aforesaid was within from twenty to thirty yards of said crossing, the decedent, who had been riding on the said box-car, jumped off the said box-car while it was traveling at a speed of about

six to eight miles per hour, and ran a few feet ahead of said train, and made an effort to flag said crossing. (Substituted for the original paragraph 11 by amendment.) (12) As decedent reached said crossing, he waved his hand quickly to stop an automobile approaching said crossing from the north; but before he had time to complete the flagging of said automobile and before he had given any signal to the engineer of the train on the crossing, said train, which had continued to move unchecked and at the same rate of speed, was already crossing the crossing, and the automobile, which had been going straight along said pavement, had, upon the approach of the train, turned suddenly to the right, and the deceased, who was then standing on the side of the pavement a little to the west side of the road, turned, but was hemmed in by the approaching automobile, and as he attempted to jump into the box-car which was moving along him he was pinned between the side of the skidding automobile and the car and mashed so severely that he died an hour afterward. (13) The train continued to move for two car-lengths or more after the collision, before it stopped. (14) The automobile stopped almost instantly upon the collision, and the moving train continued to grind against said automobile as it moved along; the automobile, after it stopped, being on the west side of the pavement adjacent to and north of the railroad.

(15) The defendant was negligent in that said train was so operated that it approached and cut off decedent's opportunity to retreat from the path of said automobile, and caused decedent to be caught between said train and said automobile. (16) If said train had stopped or had slowed its speed, decedent could have stepped from the path of said automobile even after it turned its course, and have been saved; and the defendant was negligent in that it failed to stop the train or to slow its movements before it reached said crossing. (17) Said automobile was traveling straight down the highway; and had said train stopped when decedent began waving to said automobile, said automobile would have passed said crossing without colliding either with the train or with decedent; and defendant was negligent in not stopping said train when the engineer and fireman in charge of said train saw or in the exercise of ordinary care should have seen decedent waving his hand in such manner as to indicate danger from ap-

proaching traffic. (18) Defendant was negligent in that the engineer and fireman in charge of said train failed to stop said train when they saw, or in the exercise of ordinary care should have seen, decedent waving his hands vigorously in the direction from which vehicles were approaching, and the engineer and fireman knew or should have known that the gestures of the decedent indicated danger of a collision. (19) Defendant was negligent in that the engineer and fireman . . caused said train to move . . when they saw or should have seen decedent waving in a manner that indicated danger, and in going on the track before the decedent had time to complete his warning to the approaching automobile, and before he had actually given the engineer any signal to move the train onto and over the crossing. (20) The automobile was going straight down the street south at the time the decedent began flagging; and if the engineer had waited for a signal from the decedent before entering upon the crossing, the automobile would have passed over the crossing before the train reached it. (21) There was no obstacle in the road, at said point at said time, to the south of decedent's position, except the approaching train, which could have obstructed decedent's retreat from the path of said automobile as it turned to the right at said point; and the defendant was negligent in running its train upon said crossing at said time and cutting off the opportunity of decedent for retreat, and in causing him to be entrapped between the rapidly skidding automobile and the moving train. (22) Said crossing was obstructed on all sides as aforesaid, particularly on the northwest side, by buildings and trees and embankments, and the engineer and fireman knew that said crossing was so obstructed and was a blind crossing, and the defendant should have had a flagman at said crossing to flag said crossing before the train approached; and the engineer and fireman knew that a flagman should have been there to flag said crossing, and said engineer and fireman were negligent in not stopping said train when they saw or in the exercise of ordinary care should have seen that said crossing was not being flagged by an employee, and in not allowing the decedent time within which to go to said crossing and flag said crossing before said train was run upon said crossing. (23) Defendant was negligent in that the engineer and fireman continued to operate its train at the same speed of six to eight

miles per hour for a distance of two car-lengths or more after the collision and after the automobile had stopped on said street adjacent to the train. (Substituted for paragraph 23 by amendment.) (24) Defendant was negligent in that the engineer and fireman failed to keep a proper lookout ahead along the track in the direction in which the train was moving, and in failing to discover the absence of the flagman, and in failing to wait until the decedent had given a signal for the train to move on the crossing, and in not stopping the train instantly when they saw or in the exercise of ordinary care could have seen the automobile approaching the crossing. (25) Defendant was negligent in that the engineer . . failed to blow any whistle or ring any bell or give any signal of its approach on said crossing. (26) Said defendant was negligent in that said train was being operated across said crossing at a rate of speed of from six to twelve miles per hour, without sounding any warning by bell or otherwise. (27) Each and all of the foregoing negligent acts and omissions of the defendant contributed to and caused the death of the decedent.

Otherwise than as already indicated, the first count of the petition was amended substantially as follows: (1) After the decedent "swung to the ground from said train backing at a speed of from six to eight miles per hour, . . and when said train was within twenty to thirty yards of said crossing, he ran ahead to said public street and instantly began vigorously and frantically waving his hands up and down in the direction from which said automobile was approaching, in an effort to stop" it. When he reached the pavement and "began to wave his hands to said automobile he was fifteen to thirty feet or more in advance of the rear end of said train, and was in full view of said engineer. . . Said engineer in the exercise of ordinary care should have seen said Blanton and . . stopped said train, and defendant was negligent in that said engineer did not take note of the danger indicated by . . signaling, . . and in that he did not stop said train. Said train, at the speed it was going, . . could have been stopped . . before the rear end reached the pavement of said street." (2) When the engineer saw or should have seen that there was no watchman at said crossing, and that no other employee of the defendant was there at said time, "it was his duty to slow down or stop said engine so as to allow sufficient

time for one of the employees on said switching train to approach said crossing in advance of the train and first flag the traffic, and then, upon determining the safety of the crossing, to signal the engineer to back the train over the crossing, or, in the event of danger, to signal the engineer to stop; and the defendant was negligent in that the engineer . . failed to slow down or stop said train for a sufficient length of time to allow the decedent to wave down approaching vehicles and then to either signal him forward or to signal him to stop." (3) Upon leaving said train, the decedent advanced to said crossing as rapidly as he could, and immediately signaled approaching traffic. Said automobile was "traveling at a speed of about twenty-five to forty miles per hour," and the decedent "did not have time, after waving in an effort to stop said . . automobile, to wave to the engineer . . to stop . . said train; and when decedent turned, said train had reached the crossing and cut off his retreat, and he could not, in the exercise of ordinary care, have saved himself. (4) Said crossing is a very dangerous crossing, and it was the duty of the flagman of said train, in the absence of a watchman at said crossing, to flag said crossing. In the absence of a watchman and a flagman, said flagman not being on said switching train, it was the duty of the decedent, Blanton, who was the head brakeman, and who was on the switching train assisting in the switching operations of said train, to go forward as aforesaid and flag the crossing. It was not his duty to leave the train prior to the time it reached a point twenty or thirty yards of the crossing. Said Blanton left the train at the time when his duties under the existing circumstances required that he leave the train and was in the performance of his duties under the circumstances at the time he received his fatal injuries." (7) Defendant was negligent in that said train continued to be operated for said distance after said automobile had collided with said train. (8) Defendant "was negligent in that said engineer and fireman continued to operate said train for said distance after said collision and . . mash the body of . . Blanton between the automobile and . . train when they saw, or in the exercise of ordinary care should have seen, decedent in said perilous position and being mashed as aforesaid. . . Blanton remained alive after said original impact, and the continued movement of said train

after the initial impact contributed to his fatal injuries." (9) The defendant was negligent "in that the engineer and fireman . . failed to ring any bell or blow any whistle on approaching said crossing, and that the engineer . . failed to blow any whistle when he saw, or in the exercise of ordinary care should have seen, decedent vigorously waving his hands indicating an emergency, and when he knew, or in the exercise of ordinary care should have known, of the danger of a collision with an automobile approaching said crossing."

In its answer the defendant admitted that both it and the decedent were engaged in interstate commerce, denied any negligence on its part, and pleaded "assumption of risks," and that the negligence of the driver of the automobile was the proximate cause of Blanton's death.

We shall now consider the demurrers to the first count as amended. The first two paragraphs of the demurrer are strictly general, the first averring that the count "sets forth no cause of action against the defendant," and the second that "the averments of fact . . are insufficient to show any negligence on the part of this defendant or any of its agents or employees, causing or contributing to the death of the decedent." Mrs. Blanton as administratrix had the right to bring the present action. 45 U. S. C. A., § 51. "The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." § 53. "In any action brought against any common carrier under or by virtue of any provision of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." § 54. Of course the Federal law is controlling in this case. *Central of Ga. Ry. Co.* v. *Goens,* 30 *Ga. App.* 770, 773 (119 S. E. 669), and cit. "In a suit brought under the Federal 'employer's liability act,' except generally as to violations of Federal statutes for the protection of employees, assumption of risk is an absolute defense, while contributory negligence merely reduces the damages. . . As construed by the

United States Supreme Court, contributory negligence is the omission of the employee to use those precautions for his own safety which ordinary prudence requires. On the other hand, the same authority holds that an employee assumes the ordinary risks and hazards of his occupation, and also those defects and risks which are known to him, or which are plainly observable, although due to the master's negligence." *Charleston & W. C. Ry. Co.* v. *Sylvester,* 17 *Ga. App.* 85 (86 S. E. 275). This case is based on Seaboard Air-Line Ry. Co. v. Horton, 233 U. S. 492 (34 Sup. Ct. 635, 58 L. ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475); and Schlemmer v. Buffalo Railroad, 220 U. S. 590 (31 Sup. Ct. 561, 55 L. ed. 596). "There are two rules of law applicable to the defense of assumption of risk to an action under the Federal employer's liability act, depending upon the nature of the risk assumed. . . One rule is applicable where the risk is normally and necessarily incident to the employment. In the absence of a special contract the servant assumes such risk, without qualification. The other rule has reference to extraordinary hazards, which the servant does not assume until he has notice thereof, unless the dangers arising therefrom are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. The negligence of the master or of the fellow servant is included within the latter class." *So. Ry. Co.* v. *Wessenger,* 32 *Ga. App.* 551, 561 (124 S. E. 100). "The employee is not obliged to exercise care to discover dangers not ordinarily incident to the employment, but which result from the employer's negligence." Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 468 (36 Sup. Ct. 620, 60 L. ed. 1102). See also Chesapeake & Ohio Ry. Co. v. de Atley, 241 U. S. 310 (36 Sup. Ct. 564, 60 L. ed. 1016).

We quote next from Montgomery v. Baltimore & Ohio R. Co., 22 Fed. (2d) 359, 360: "If the starting of the engine without the bell was not negligent, there was no case. If it was, we can not say that plaintiff assumed the risk. His contract of assumption does not reach risks arising from the non-customary, unknown, and not to be anticipated negligence of a fellow servant." In answering a certified question from this court, the Supreme Court, in *L. & N. R. Co.* v. *Hood,* 149 *Ga.* 829 (102 S. E. 521), said: "'The statute contains three propositions which stand out

in bold relief: the first is that a carrier is liable for the injury or death of an employee resulting *in part* from the carrier's negligence; secondly, the employee's contributory negligence does not cut off the right of action; and, thirdly, there is to be a diminution of damages in proportion to the employee's negligence.' . . *Southern Railway Co.* v. *Hill,* 139 *Ga.* 549 (77 S. E. 803). See also *L. & N. R. Co.* v. *Paschal,* 145 *Ga.* 521 (89 S. E. 620). And it has been held by the Supreme Court of the United States that it is only where the act or omission on the part of the plaintiff is the sole cause—when the defendant's act is no part of the causation, that the defendant is free from liability under the act. See Grand Trunk Ry. Co. *v.* Lindsay, 233 U. S. 42 (34 Sup. Ct. 581, 58 L. ed. 838, Ann. Cas. 1914C, 168). And it would seem a fair statement of the rule to say that unless the act or omission of the plaintiff is the sole cause of the injury, his act or omission must be considered as contributory negligence, and contributory negligence does not defeat a recovery. See Richey on Federal Employers Liability Act, 39 et seq.; 18 R. C. L. 826 et seq. And where a railroad company has been guilty of negligence that has a causal relation to the plaintiff's injury, the plaintiff may recover even though he has been guilty of contributory negligence in regard thereto, and that contributory negligence was of such a character and so related to the injury received that if the plaintiff had exercised ordinary care he might have avoided the consequences of the defendant's negligence. If the defendant was negligent, and negligent in such a way as to bring about or contribute to the injury, the fact that the plaintiff failed to exercise diligence, when under the circumstances by the exercise of diligence he might have avoided the injury, in no wise makes his negligence the sole cause of the injury. But where the injury was the joint result of the negligence of the defendant railroad and of the plaintiff, there may be a recovery by the plaintiff, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee."

The rule governing general demurrers where questions of negligence are involved is well stated in *Central of Ga. Ry. Co.* v. *Hartley,* 25 *Ga. App.* 110 (103 S. E. 259), as follows: "Ordinarily, issues relating to negligence, including contributory negligence . . are questions which lie peculiarly within the province of the

jury to determine. As a general rule, not only is it incumbent upon the jury to say whether the particular conduct charged against the defendant is proved, but, except as to allegations relating to negligence per se, it is their further duty to determine whether or not such acts, if proved, were negligent; and if so, it then becomes their final duty to solve any issue made as to whether or not such proved acts of negligence on the part of the defendant constituted the proximate cause of the injury. While it is true that where a petition indisputably shows on its face that the plaintiff is not entitled to recover, and the question is made by general demurrer, it is the duty of the court to dismiss the action, still the application of this rule can not properly be invoked except in cases so plain as will in no wise admit of a reasonable contrary interpretation." It "is a well-settled principle of law that where two concurrent causes operate directly in bringing about an injury, there can be a recovery against either one or both of the responsible parties. The mere fact that the injury would not have been sustained had only one of the acts of negligence occurred will not of itself operate to define and limit the other act as constituting the proximate cause; for if both acts of negligence contributed directly and concurrently in bringing about the injury, they together will constitute the proximate cause. *Barrett* v. *Savannah,* 9 *Ga. App.* 642 (72 S. E. 49) ; *Bonner* v. *Standard Oil Co.,* 22 *Ga. App.* 532 (96 S. E. 573). . . The determination of questions as to negligence lies peculiarly within the province of the jury, and in the exercise of this function the question as to what constitutes the proximate cause of an injury complained of may be directly involved as one of the essential elements and disputed issues in the ascertainment of what negligence, as well as whose negligence, the injury is properly attributable to. *White* v. *Seaboard Air-Line Ry.,* 14 *Ga. App.* 139 (80 S. E. 667). It was not error, therefore, for the judge to overrule the railway company's demurrer to the petition, since it was properly a question of fact, for the jury to determine from the evidence, whether the defendants were guilty of negligence in any of the particulars charged, and, if so, whether the concurrent acts of negligence of both wrong-doers, or the separate acts of either of them, constituted the proximate cause of the injury." *Ga. Ry. & Power Co.* v. *Ryan,* 24 *Ga. App.* 288 (100 S. E. 713).

Our view is that if, as substantially alleged, the decedent, in the performance of his duty, left the backing train, which was running about six or eight miles an hour, when it was within a car-length of the crossing, and reached the pavement "fifteen or thirty feet or more in advance of the rear end of said train," and "was in full view of said engineer" when he "instantly began vigorously and frantically waving his hands up and down" in an effort to stop the approaching automobile, it was for the jury to say whether or not the engineer was negligent in failing to slow down or stop the train without waiting for a direct signal from the decedent to him to do so. Again, the count alleges that "the train continued to move for two car-lengths or more after the collision before it stopped," and the decedent "remained alive after said original impact, and the continued movement of said train after the initial impact contributed to his fatal injuries." Without discussing the other allegations of negligence pleaded, we think that the count sufficiently alleges negligence against the defendant; and applying the principles of law announced in many of the authorities cited to the very unusual state of facts presented by the petition, we are satisfied that the decedent can not be held as a matter of law to have assumed the risk in question. We hold that the court did not err in overruling the general demurrer to both counts as amended.

The evidence is insufficient to support a verdict against the railroad company. Substantially three questions are presented for decision: (1) Was the jury authorized to find that the engineer of the defendant was negligent in failing to stop his train before the deceased had flagged the crossing and before receiving a signal from him to proceed? (2) Was the jury authorized to find that the defendant was negligent in that its engineer should have stopped his train before reaching the crossing, after seeing the deceased flagging an approaching automobile? (3) Was the jury authorized to find that the defendant was negligent in continuing to operate its train after the accident? The train on which the deceased was working consisted of an engine and two cars, and immediately before the accident it was backing toward the crossing at about six to eight miles per hour. The deceased, the engineer, and the fireman were the only employees on the train. It appeared from the evidence that the movements of

the train were controlled solely by the signals of the deceased. The engineer was required to look to him to give an order or signal to go, stop, or slow down. He was "the man to give signals; and that would be to move forward, or stop, or anything of that kind. . . If he came to a road crossing, to precede the train over the crossing . . and see that there was nothing on the crossing, so that it could proceed. . . If he saw there was danger to anybody, it would be his duty to signal the engineer to stop." The position of the crossing and the objects which prevented the driver of the automobile from seeing the train were proved, about as alleged in the petition. The evidence further disclosed that in backing his train to this crossing the engineer could not see an approaching automobile. As the train approached the crossing, the deceased was swinging on the grab-irons on the engineer's side at the front end of the rear car. Witnesses for the plaintiff who were riding in this car said that the deceased jumped off the car about a car-length before it reached the concrete roadway, reached the crossing about 20 feet in advance of the freight-car, and began flagging with his left hand to an automobile which was approaching the crossing from the road about 100 or 150 feet away. The automobile was traveling fast, about 40 to 50 miles per hour. These eye-witnesses for the plaintiff who were riding in the front freight-car testified that the deceased waved his left hand rapidly at the approaching automobile, but that no signal that they saw was given to the engineer. After having attempted to stop the approaching automobile, when the deceased saw that he would not be able to stop it, he turned and attempted to jump in the door of the box-car. The driver of the automobile turned the automobile to his right and struck the deceased, rolling him between the freight-car and the automobile, which were traveling in opposite directions.

It is recognized by this court that ordinarily questions of negligence are for determination by the jury. However, where, taking the facts most favorably to the plaintiff, it is apparent that the defendant was guilty of no breach of duty owed to the deceased, this court may, and often has, decided the question of negligence as a matter of law. It is inferable from the evidence that the deceased had given the signal to the engineer to approach the crossing; and there is no evidence as to any custom or rule re-

quiring the engineer to stop before reaching the crossing, and to proceed only upon signals given by the deceased. The deceased had the right to stop the train and then proceed out to the crossing to see if the way was clear. In not stopping the train before going upon the crossing, he certainly assumed as a part of the risk of his employment the danger of flagging a crossing with a moving train approaching. So it could not be said that there was any negligence on the part of the engineer, unless he should have stopped his train after he saw the deceased waving to an approaching automobile. As between the deceased and the engineer, there existed a prescribed standard of conduct as to the movements of the train. It was the deceased's duty to stop and control the movements of the train by signals. It was also his duty to flag all crossings. The main contention of the plaintiff was that the engineer, upon seeing the deceased waving his hand toward an approaching car, should have recognized the dangerous situation, and in the exercise of ordinary care should have brought his train to a stop before reaching the crossing, even though no signals were given by the deceased to the engineer to stop. However, under the facts of this case, we can not accept this view. If the deceased had the right to control the movements of the train, and, among other duties, it was his duty to flag a crossing over which his train was about to move, his waving to an approaching automobile, in so far as the engineer was concerned, was not more than he was expected to do. It did not indicate any unusually perilous situation, for the engineer was certainly entitled to assume that any car approaching, which he could not see, would be traveling at a reasonable rate of speed and would be able to stop before reaching the crossing. In this connection the petition alleged that on reaching the crossing the deceased "frantically" waved his hands towards the approaching car, which, as was alleged, should have put the engineer on notice of the extraordinary danger. However, the evidence does not sustain any "frantic" or unusual actions on the part of the deceased. It merely shows that he waved his left hand rapidly at the approaching car. The engineer could not see the approaching car, and we can see nothing in the evidence which should have put him on notice that to proceed was to endanger the life of the deceased. If the deceased, by his failure to slow the speed or stop the train, created an emergency

at the crossing because of the rapidly approaching automobile, and in such emergency the deceased "did not have time" to signal the engineer to stop the train, we can not see how the failure of the engineer, in the emergency not created by himself (which "happened in a flash"), to interpret the action of the deceased in waving to the approaching car as a circumstance requiring that he stop the train, could be charged as negligence on his part. The engineer did not know, for he could not see, how fast the car was approaching. If the emergency, which was not created by the engineer, prevented the deceased from signaling the engineer, it was not negligence, under the circumstances, for him to fail to interpret the action of the deceased in waving to an automobile as a signal for him to stop the train. As to the third question, while there may have been some evidence to support a finding that the engineer did not stop his train as soon as possible after the accident, although the plaintiff's witnesses testified that he stopped as quickly as he could, there was no evidence produced to show that the movement of the train after the collision in any way contributed to the death of plaintiff. According to the evidence, the deceased fell at the point on the pavement where the collision occurred, and the automobile stopped in the ditch to the west of the pavement. The evidence fails to show that the body of deceased was between the freight-car and the automobile any greater length of time than that in which the train could have been stopped after the accident. For the above reasons the court erred in overruling the motion for new trial.

*Judgment reversed. Guerry and Felton, JJ., concur. MacIntyre, J., dissents. Broyles, C. J., disqualified.*

MacIntyre, J., dissenting. I agree with the majority that the judge properly overruled the demurrers to both counts of the petition, but am of the opinion that the liability of the defendant was a jury question. T. H. Sheridan testified, in part: "I am a former locomotive engineer. I was employed as a locomotive engineer around forty-five years. I have had experience in practically all kinds of locomotives and all kinds of operations of trains. If a train is traveling at six or eight miles per hour, and in the train is the engine and tender and two empty box-cars, and it is traveling on practically a level track, by using the brake in emergency it ought to be stopped in about six or eight feet." Hoyt

J. Slate testified, in part: "Will Blanton was on the step of the forward end of the rear box-car . . before he swung off. He was about the distance of two box-cars from the crossing before he swung off—one or two box-cars, something like that, I wouldn't say just exactly. As he swung off he ran ahead of the train. As to how far ahead of the train he got by the time he reached the edge of the pavement, I would say about twenty feet. As he approached the pavement he started flagging. . . There was an automobile approaching from the north. . . He was looking towards the automobile. He was throwing his hand towards the automobile and towards the ground. I would say that he was doing it as fast as he could." G. B. Brown, the engineer of the train in question, testified, in part: "I had traveled over that crossing a number of times. I have been on that run thirty-two years. I knew there wasn't a regular crossing flagman stationed there. Mr. Blanton was in full view of me from the time he got off the train until the time he was struck." It is perfectly apparent that the jury had the right to conclude that the engineer knew that he was approaching a "blind crossing;" that he saw the deceased "throw his hand towards the automobile and towards the ground . . *as fast as he could*" as "*he approached the pavement;*" and that the engineer could have slowed down or stopped the train in time to avoid injuring the deceased after he saw the latter wave his hand as fast as he could towards the automobile as "he approached the pavement." Under the peculiar facts of this case I do not think that it can be held that the deceased "assumed the risk." See the authorities cited in the majority opinion. Again, since contributory negligence does not bar a recovery under the employer's liability act, and since questions of negligence are ordinarily left for the jury to solve, I am of the opinion that the jury had the right to conclude, under the rather unusual situation presented, that the engineer was negligent in failing to stop the train before it reached the crossing. Therefore I differ from the view of my brethren that the court erred in overruling the general grounds of the motion for new trial.