## 28175. SOUTHERN RAILWAY CO. *v.* BLANTON, administratrix.

DECIDED JUNE 17, 1940. REHEARING DENIED JULY 30, 1940.

*Matthews, Owens & Maddox, D. B. Howe,* for plaintiff in error.
*Arnold, Gambrell & Arnold, Edwards & Edwards,* contra.

SUTTON, J. ■ The present case, in which Mrs. Esther Blanton as administratrix of the estate of Will Blanton, deceased, brought an action against the Southern Railway Company to recover damages for the homicide of her deceased husband, Will Blanton, has twice been before this court. In *Southern Railway Co.* v. *Blanton,* 56 *Ga. App.* 232 (192 S. E. 437), where the pleadings are fully set forth, it was held that the petition set forth a cause of action, but that the evidence was insufficient to authorize the verdict which had been returned in favor of the plaintiff. The case was retried, and the plaintiff again obtained a verdict, but in *Southern Railway Co.* v. *Blanton,* 59 *Ga. App.* 252 (200 S. E. 471), the judgment of the court was reversed because of certain errors in the charge of the trial court. The case was one involving an accident at a railroad crossing, and was brought under the Federal employer's liability act; and it is conceded by both parties that at the time of the homicide the deceased and the defendant were both engaged in interstate commerce. Count 2 of the petition was substantially the same as count 1, except that it was not alleged with the same particularity as in the first count as to the manner in which the decedent reached the pavement of the roadway over which the defendant's track crossed and about which location the decedent met his death. The grounds of negligence in count 1 were, that (a) the train was so operated as it approached the crossing that it cut off decedent's opportunity to retreat from the path of the automobile, and caused him to be caught between the train and the automobile; (b) in failing to stop the train or to slow its speed before reaching the crossing; (c) in not stopping the train when the engineer and fireman saw or, in the exercise of ordinary care, should have seen

the decedent waving his hands in such a manner as to indicate danger from approaching traffic; (d) in not waiting for a signal from the decedent before moving onto and across the crossing, and in not allowing the decedent time to go upon and flag said crossing; (e) in continuing to operate the train after the deceased was struck; (f) in failing to keep a proper lookout ahead, and in failing to blow the whistle, ring the bell, or otherwise signal the approach of the train to the crossing. The second count contained allegations of negligence substantially as follows: (a) failure of the engineer and fireman to keep a proper lookout ahead; (b) moving said train over the crossing without having first received a signal to go forward; (c) failure to ring a bell or give any signal of the approach of the train; (d) continuing the movement of the train for a distance of two car-lengths or more after the collision. The defendant denied the substantial allegations of the petition, and set up that the decedent's death was caused by the negligence of the driver of the automobile which ran into him, crushing him between it and the freight-car on the crossing, and that this was a hazard from traffic on the street and was an ordinary risk of his employment, assumed by him, and which was necessarily known to him as he approached the crossing to flag the train. On the last trial of the case the plaintiff again obtained a verdict, and the exception is to the judgment of the court overruling the defendant's motion for new trial.

The evidence was conflicting, but the jury was authorized to find the following facts: The decedent met his death while acting as a brakeman or flagman at an admittedly dangerous crossing in Bremen, Georgia, where a city street crossed at right angle a side-track of the defendant. An engine moving eastward was backing two box-cars toward the crossing at a rate of speed of six to eight miles per hour. The decedent, the fireman, and the engineer were the only employees on the train. The fireman was on the right side of the engineer, and could not observe what was taking place on the left. The tracks over which the cars were being pushed ran parallel to a building which was located about seventy feet from the edge of the pavement at the crossing where the accident occurred. This building and certain growth on the embankment along the left of the track so obscured the view of the engineer also that he could not see up the road from the crossing for more than

about twenty feet. The decedent, who was hanging on the steps at the end of the rear car as it approached the crossing, dropped to the ground on the north side of the track and ran ahead of the train in an easterly direction, for the purpose of flagging the crossing. As he reached the pavement at the crossing, and when the end of the rear car was about half its length from the crossing, he stepped out onto the pavement, facing north, and began to wave his hands rapidly up and down and across the lower part of his body something like thirty times before the impact in which he met his death. At the same time he was stepping a few feet forward and then backwards. While so incessantly waving his hands, and in full view of the engineer, the train continued towards the crossing. An automobile was approaching from the north, and was at a distance of 150 to 200 feet away when Blanton reached the crossing and began waving, and it was traveling at 35 to 40 miles an hour. A rain had made the pavement slippery; and while the train was crossing the highway, the automobile, apparently to avoid contact with it, suddenly turned to the right. The decedent, who was then standing on the pavement between the center and the west side of the roadway, was hemmed in. While attempting to jump into the second passing box-car he was pinned between the side of the skidding automobile and the moving freight-car, and was so severely mashed that he died within an hour thereafter.

With respect to whether or not any signal was given by the engineer as the train approached the crossing, the evidence was also conflicting. It was not contended that the whistle of the engine was blown, but the engineer and fireman testified that the bell was ringing all the time. Witnesses who, as before stated, were riding in the box-car nearest the engine and were standing at the door and watching the decedent all or part of the time, testified that they heard no signal whatever.

As to whether or not any obligation rested on the engineer to stop the train under the circumstances, the engineer testified by affidavit that he and the decedent had made many switching operations at this particular crossing, and that it was not only the rule of the railroad that he should continue forward unless given a signal by the decedent to stop, but that between him and the decedent such a prescribed standard existed; and that in fact the decedent on this occasion, while holding his left hand forward, but not wav-

ing it, and as if he had approaching traffic under control, thus signaled to him to continue forward. The aforesaid witnesses, who rode in the box-car and were standing at its door, testified that the only movements of the decedent's hands consisted of violent motions or waving of both hands up and down and across the lower front part of his body until the very moment when he was obliged to jump from the path of the automobile. Other witnesses who had had many years of experience in railroad switching operations testified that under the circumstances of the present case the actions of the decedent were such as to require the engineer to regard them as distress signals, and not as indicating that the engineer should continue forward but that he should, regardless of any general rule, have stopped the train as quickly as possible. Experienced railroad men testified for the defendant, however, that such waving by the decedent was not to be interpreted by the engineer as a signal to stop, but that in the absence of a positive prescribed signal from the decedent to stop it was the duty of the engineer to continue forward with the train at even a dangerous crossing.

It is contended by the plaintiff in error that the decedent assumed the risk in which he met his death, that the engineer was in no wise negligent, and that the present case is controlled by the law of the case as made on its first appearance here in 56 *Ga. App.* 232, in that, it is averred, there is no substantial difference in the evidence. We think, however, that the evidence on the last trial of the case was different in many respects, and though conflicting was sufficient to authorize the verdict in favor of the plaintiff. As held in the first headnote of 56 *Ga. App.* 232: "Ordinary risks under the Federal employer's liability act are those which are normally and necessarily incident to the employment. In the absence of special contract, the employee assumes such risks without qualification. Extraordinary risks are those that are not normally and necessarily incident to the employment, and which the employee does not assume until he has notice thereof, unless the dangers arising therefrom are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. The negligence of the master or of the fellow servant is included within the latter class." See also *Pollard* v. *Meeks,* 60 *Ga. App.* 664 (4 S. E. 2d, 722). On the first appearance of this case this court held, in respect of the evidence then shown by the record, that the

jury was not authorized to find that the engineer was negligent in not stopping his train before reaching the crossing, either under the general rule of the company or because of the manner in which the automobile was being flagged, or in continuing to operate the train after the impact. However, the rulings were predicated on the following findings of fact: (1) that the train was controlled solely by the signal of the flagman, and that he did not signal the engineer to stop; (2) that there was no evidence as to any custom or rule requiring the engineer to stop before reaching the crossing; (3) that as between the decedent and the engineer there existed a prescribed standard of conduct as to the movement of the train, and it was the decedent's duty to stop and control the train at a blind crossing; and that, such being true, the waving of the decedent did not indicate to the engineer any unusually perilous condition, inasmuch as the engineer was entitled to assume that the approaching automobile would stop, and the evidence did not show any "frantic" or unusual actions on the part of the decedent, but that he merely waved his left hand rapidly; that the engineer could not see the approaching automobile, and there was nothing to put him on notice that to proceed was to endanger the life of the flagman; that if the decedent by failing to stop the train created an emergency and then did not have time to signal the engineer to stop the train, the failure of the engineer in the emergency not created by himself to interpret the waving as a circumstance requiring him to stop the train could not be charged as negligence on his part; that the evidence failed to show that the body of the decedent was between the freight-car and the automobile any greater length of time than that in which the train could have been stopped after the accident.

Entertaining such a view of the evidence, with no negligence of the engineer involved, this court held that the decedent assumed the risk of his employment, and that recovery was not permissible. It is clear from the opinion, however, that if the evidence had sustained the allegations of the petition as to vigorous and frantic waving of the hands by the decedent, the alleged negligence of the engineer would have been a question for the jury. Said the court: "Our view is that if, as substantially alleged, the decedent, in the performance of his duty, left the backing train, which was running about six or eight miles an hour, when it was within a car-length of the crossing, and reached the pavement 'fifteen or thirty feet or

more in advance of the rear end of said train,' and 'was in full view of said engineer' when he 'instantly began vigorously and frantically waving his hands up and down' in an effort to stop the approaching automobile, it was for the jury to say whether or not the engineer was negligent in failing to slow down or stop the train without waiting for a direct signal from the decedent to him to do so. Again, the count alleges that 'the train continued to move for two car-lengths or more after the collision before it stopped,' and the decedent 'remained alive after said original impact, and the continued movement of said train after the initial impact contributed to his fatal injuries.' Without discussing the other allegations of negligence pleaded, we think that the count sufficiently alleges negligence against the defendant; and applying the principles of law announced in many of the authorities cited to the very unusual state of facts presented by the petition, we are satisfied that the decedent can not be held as a matter of law to have assumed the risk in question. We hold that the court did not err in overruling the general demurrer to both counts as amended." The evidence in the record now under review authorized the jury to find that the waving of hands by the decedent was not a mere "rapid" motion, but was in such a manner as to reasonably indicate to the engineer that to proceed farther would endanger the life of the flagman, and was such a circumstance that made it negligence on the part of the engineer not to stop the train instead of blindly assuming that the incipient danger would abate before the train reached the crossing. The characterization of the decedent's conduct as his own creation of an emergency was based on the theory that the train was controlled solely by him, and that, if he did not signal the engineer to stop, the failure of the engineer to interpret mere *rapid* waving as a circumstance requiring the stopping of the train could not constitute negligence on his part. Under the evidence on the last trial the jury was authorized to find that a duty did rest on the engineer. Assumption of risk of an extraordinary nature does not include negligence of a fellow employee of which he has no notice, unless the danger arising from the risk is so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate it. The flagman in the present case had the right to assume that as he violently flagged the oncoming automobile the engineer would exercise ordinary care to-

ward him; and if the jury found that such care required that the engineer stop the train, it was authorized to further find that the flagman had the right to assume that he would do so, and would not so proceed with the train as to make it create an obstruction against the continuance of the automobile along the highway and over the crossing if the flagman failed to stop it. Even if the driver of the automobile had not heeded the signal of the flagman, if the train had stopped short of the crossing the automobile could have continued on the pavement and over the crossing instead of leaving the roadway and, while attempting to avoid collision with the train, pinning the flagman between it and the train. In other words, the jury could find that the negligence of the engineer put the train in such a position that the automobile was forced to turn sharply from the highway instead of proceeding onward, and that between the two the flagman was caught and fatally injured. The evidence showed that after the flagman was so entrapped the train moved one or two car-lengths over the crossing, and finally rolled the body of the flagman from its confines.

It is contended by plaintiff in error that the flagman's death was due to his own negligence in continuing to flag the approaching automobile until too late to escape from it, whereas by stepping out of the roadway before the train blocked its passage he could have avoided injury. It was the duty of the decedent to flag the crossing, and it can not be said as a matter of law that he created the emergency in which he soon found himself. In the manner in which he signaled the automobile, he might reasonably have hoped to stop it; and who shall say at what moment he should have realized that his efforts would be futile? It is contended by plaintiff in error that if he had time to wave his hands rapidly thirty times, as testified by some witnesses, he likewise had time to give a stop signal to the engineer, and should have done so. But in an emergency one can not be held to the same circumspection of conduct that he would be held to if acting without the compulsion of the emergency, and he has a right to choose even a dangerous course if that course seems to him the best or safest under the circumstances. It was for the jury to say whether or not he could, in the exercise of ordinary care, have avoided the injury. By their verdict, under the charge of the court, they have said that he could not have done so; and this court can not say as a matter of law to the contrary.

It appears from the evidence that the train was proceeding at six to eight miles per hour and never slackened its speed until the automobile was within a few feet of the crossing. The engineer testified that he was busy watching the decedent as he signaled the engineer to continue forward. He was, however, in position to see the automobile when he was within twenty feet of the crossing. There was testimony that he could have stopped the train within five or six feet, and as he proceeded a greater distance it necessarily follows that the jury was authorized to find that he was negligent in not stopping the train before the moment of impact. The train passed over the crossing for a distance of one or two car-lengths. The body of the decedent was between the train and the automobile for a distance of about a half car-length and was then rolled out. The engineer testified that he had no air-brakes in operation at the time, but applied his emergency brakes and stopped as quickly as possible. Whether he could have stopped after the impact within five or six feet is immaterial to the decision of this case, inasmuch as the jury could find that the original pinning of the body against the train was so violent as to have reasonably brought about his death, irrespective of any after effects produced by the continued movement of the train with the body between it and the automobile. It is further contended by the plaintiff in error that the sole cause of the homicide is shown to have been due to negligence of the driver of the automobile in continuing forward at a high rate of speed instead of heeding the signal of the decedent, in that had he stopped the collision would not have occurred. The jury, however, was authorized to find from the evidence that the homicide was caused by the concurrent negligence of the driver and the engineer. In such a case recovery may be had against either. "It is a well-settled principle of law that where concurrent causes operate directly in bringing about an injury, there can be a recovery against one or all of the responsible parties. The mere fact that the injury would not have been sustained had only one of the acts of negligence occurred will not of itself operate to define and limit the other act as constituting the proximate cause; for if all acts of negligence contributed directly and concurrently in bringing about the injury, they together constitute the proximate cause." (Citing.) *Adams v. Jackson*, 45 *Ga. App.* 860 (166 S. E. 258). From what is said it follows that the verdict was authorized under the law and the

evidence, and that the court did not err in overruling the general grounds of the defendant's motion for new trial.

■ The plaintiff requested the court to charge the jury as follows: "If you find that the sole and proximate cause of the death of Mr. Blanton was the negligence of the driver of the automobile which struck him, then you should find for the defendant." The court gave this principle of law in a portion of the charge immediately after stating to the jury the pleadings of the parties. In thereafter charging on the question of contributory negligence the court stated that if the jury found that the driver of the automobile was guilty of negligence proximately causing the death of the plaintiff's husband, *and was the sole and proximate cause of it,* and the defendant was also guilty of negligence proximately resulting in his death, and the negligence of the two combined proximately caused his death, the fact that the negligence of the driver was a contributing cause of the death of the plaintiff's husband would not bar the plaintiff from recovery. Counsel for the plaintiff then privately called the court's attention to the use of the words shown above in italics, in reference to the negligence of the driver of the automobile; whereupon the court charged the jury as follows: "If you find there was negligence on the part of the defendant railway company, through its employees, in the operation of said train, of which the deceased could not have known, that is to say, if you find that the driver of the automobile was guilty of negligence proximately causing the death of the plaintiff's husband, and that the defendant company was also guilty of negligence proximately resulting in the death of the plaintiff's husband, and that the negligence of the two combined proximately caused the death of the plaintiff's husband, the fact that the negligence of the driver of the automobile was a contributing cause of the death of the plaintiff's husband would not prevent the plaintiff from a recovery against the defendant railway company. I withdraw from your consideration the words 'sole and proximate.' I withdraw the words that I used that the operation of the automobile was the sole and proximate cause of the injury, but I repeat that if the negligence of the driver of the automobile was the sole and proximate cause of the injuries and death of Mr. Blanton the plaintiff could not recover, and I did not intend to say that in connection with the particular charge I have given you. I hope I have made that clear."

The charge was not confusing or misleading to the jury, as contended by plaintiff in error in its first special ground of the motion for new trial.

■ In ground 2 the plaintiff in error complains that the court, in a portion of its charge as to certain provisions of the act of Congress usually referred to as the Federal employers' liability act (45 U. S. C. A. 92, § 51), under which the present case was tried, erred in failing to charge in connection therewith that the decedent assumed the risk incident to his employment, and that the assumption would bar any recovery on his part; that the charge as given had the effect of leading the jury to believe that they should find for the plaintiff if they found that he was killed by the operation of the train while engaged in interstate commerce; that it eliminated from the jury's consideration the question made by the pleadings and the evidence as to whether the decedent's death was caused by the negligence of the driver of the automobile; that it did not inform the jury as to whether the charge applied to the pleadings and evidence or what part was applicable and how it should be applied; that the expression used in said charge in connection with the statement that "such liability to be where death results in whole or in part from the negligence of the officers, agents, or employees of such carrier, that is, the defendant in this case," was erroneous in that the same was an expression of an opinion on the part of the court that the death of the decedent resulted from the negligence of "the defendant in this case." An examination of the entire charge of the court shows that the court elsewhere properly instructed the jury as to the law of assumption of risk, and gave to the defendant the benefit of all of its defenses. It was not necessary that the principle of law contended for be charged in immediate connection with the portion of the charge to which the exception is taken. The objection that the words, "that is, the defendant in this case," amounted to an expression of an opinion that the death of the decedent resulted from the negligence of the defendant is without merit. The expression, properly construed, could mean only that the court was stating to the jury that the carrier was the defendant in this case, and the charge was not error for any reason assigned.

■ The third special ground complains that the court, in charging the jury on the question of reduction of damages, failed to

instruct the jury as to their consideration of the question whether or not the homicide was caused by the negligence of the driver of the automobile, and limited the jury to the question of negligence of the decedent and the defendant. Any negligence of the driver, not the sole and proximate cause of the homicide, would not, as mere contributory negligence, prevent the plaintiff from recovering, and the charge was not error for any reason assigned.

■ The fourth ground complains that a portion of the charge of the court with respect to assumption of risk was inapplicable, insufficient and incomplete, and an expression of opinion that the decedent was not aware of the approach of the train. This charge was not error for any reason assigned and was authorized under the principles of law and the evidence discussed in the ruling on the general grounds.

■ The fifth ground complains of the charge: "The defendant claims that the plaintiff's husband, in his employment, assumed the risk of injury from the train which caused his death. This is the contention of the defendant." It is contended that it was an incorrect statement, in that the defendant claimed that the decedent assumed, not only the risk incident to the operation of the train, but all risks of injury from his occupation, and because it was an expression of opinion that the defendant admitted that the movement of the train was the proximate cause of the decedent's death. Inasmuch as the decedent met his death in the course of the operation of the train, the language objected to was correct and sufficiently broad for the determination of the issues made by the pleadings and the evidence, and was not, as contended, an expression of opinion.

■ The portion of the charge of the court on the question of the duty of the decedent and the defendant to use ordinary care was not erroneous for any reason assigned in the sixth ground.

■ The charge of the court, "I also charge you that if you find that the plaintiff's husband was put in a position of peril and danger by the approach of an automobile going along the public highway, and if by reason of the approach of an automobile the defendant, through its agents and servants in charge of said train, knew or in the exercise of ordinary care should have known of Blanton's peril, if by the exercise of ordinary care on their part plaintiff could have been saved after he was put in a position of peril, if

you find that he was in a position of peril at the time, such agents and servants of the defendant were bound to exercise ordinary care to save the plaintiff's husband, and such failure would render the defendant company liable for damages, unless barred of recovery by some other rule of law given you in charge," was not error for the reasons assigned in the seventh ground of the motion, that it was inapplicable, not adjusted to or authorized by the evidence, placed a greater duty upon the engineer than imposed by law, and excluded from the jury's consideration the question whether the decedent's peril was created by him or by the separate act of the driver of the automobile, and whether or not the decedent placed himself in a position of peril and was negligent in remaining in the path of the automobile without signaling the engineer to stop; and the assignment of error is controlled adversely to the plaintiff in error by what is said in the foregoing opinion in dealing with the general grounds.

█ Grounds 8, 9, 10, 12, 13, 14, and 16, complaining of the refusal of the court to give certain requested charges, are without merit, inasmuch as they were not applicable and adjusted to the pleadings and the evidence. The charge of the court was full and complete, and fairly submitted to the jury all of the issues involved in the case.

█ Ground 11 complains that the court, after charging the jury, as requested by the defendant, "It appearing that Mr. Blanton was injured at a point within the corporate limits of Bremen, I charge you that there is no absolute requirement of law that the whistle of the locomotive should have been blown in approaching this street crossing," also charged: "In this connection I charge you that it is for you to determine whether or not the circumstances were such that the engineer in charge of the train, in the exercise of ordinary care, should have blown the whistle. That is a question for you to determine." This ground is without merit. While the law does not require that a locomotive whistle be blown at a crossing within a municipality, circumstances may be such, in the opinion of the jury, that the exercise of ordinary care would require the blowing of the whistle, and the charge complained of was not error. *Pollard* v. *Savage*, 55 *Ga. App.* 470, 474 (190 S. E. 425).

█ Ground 15 assigns error on the refusal of the court to charge, as requested, "that the mere opinion of the witness Mr.

Maffett, that the train, while approaching this crossing, could have been stopped in approximately five feet, is not sufficient to overcome the positive and otherwise uncontradicted evidence of the engineer in charge of the engine that all was done which possibly could be done to stop it, and it could not be stopped until the engine had run the distance of one and one half or two car-lengths." The requested charge was not adjusted to the evidence, in that the engineer did not testify that he attempted to stop the train as soon as the decedent began waving his hands, and when the box car nearest the crossing was fifteen feet or more distant therefrom, but only at the time and point when the automobile crashed with the train. Furthermore, it was for the jury to determine whether, as testified by the witness Maffett, an experienced railroad engineer, the train, traveling at six to eight miles an hour, could have been stopped within five feet, notwithstanding the opinion of the engineer that he did all he could to stop it; especially since it was not shown that there were any physical conditions which made the testimony of Maffett incredible.

Grounds 17 to 22, inclusive, complain of the admission in evidence of testimony from certain witnesses for the plaintiff, experienced railroad men, as to what, under the facts of the case, the engineer should have done with respect to stopping the train, and are without merit, inasmuch as the testimony was admissible under the ruling of this court on the former appearance of the present case, as reported in 59 *Ga. App.* 252 (3) (200 S. E. 471).

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., concurs in the judgment.*