## SOUTHERN PACIFIC CO. v. RALSTON.
### No. 688.

Circuit Court of Appeals, Tenth Circuit.
Jan. 20, 1933.

Paul H. Ray, of Salt Lake City, Utah (Robert L. Judd and E. M. Bagley, both of Salt Lake City, Utah, on the brief), for appellant.

Willard Hanson, of Salt Lake City, Utah (Lindsay R. Rogers, of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

Ralston, while in the employ of appellant as head-brakeman on its freight train carrying interstate commerce, received personal injuries for which he recovered judgment as his damages. The train arrived at Grant's Pass, Oregon, a few minutes after 4:00 o'clock A. M. on August 31, 1930. A car was set out, and the train was then pulled across Sixth Street, and the engine and tender, the latter being a tank car containing fuel oil and water, were uncoupled from the train. The other two brakemen went to breakfast and the conductor to the train dispatcher's office. This left the engineer, fireman, and Ralston with the engine and tank, Ralston being in charge, for the time being, of their movements. The engine and tank were then switched to another track which also crosses Sixth Street. Ralston was standing in the stirrup or step on the corner of the tank farthest from the engine and on the fireman's side. He gave the fireman a signal to back up. When the forward end of the tank was within about 80 feet of Sixth Street, Ralston saw an automobile turn into Sixth Street 243 feet away from the railway track where it crossed Sixth Street. The fireman also saw the automobile. Thereafter there was no obstruction of Ralston's view or the fireman's view of the automobile. Its headlights were on, the street was well lighted by lamps on posts along the curb, there were lights on the engine and tank, and

the moving engine and tank were in full view of Miss Jones, sole occupant of the automobile. The street was paved to a width of 56 feet, and there was 12 feet on either side for walks.

Ralston testified he gave the fireman a stop signal just as the automobile turned into Sixth Street, that it was going about 25 to 30 miles an hour, and he suspected there might be a collision, that the engine and tank were moving 4 to 5 miles per hour, that the forward end of the tank was two car lengths from Sixth Street when he began to give the stop signal, and he kept on giving it until the tank had gotten well into Sixth Street when the automobile ran into it at its corner where he was standing and broke his leg—that his stop signal was not heeded. The stirrup or step on the tank was torn off and the front of the auto crushed.

The fireman testified that Ralston did not give a stop signal at all, that he gave the customary warning signal to those approaching a place of danger, that the engine and tank were moving 3 to 4 miles per hour, and that the automobile turned into Sixth Street at a speed of 20 to 25 miles per hour. The swing of a brakeman's lantern with the line of the track is a warning to one approaching, swinging it crosswise is a signal to stop the train.

The engineer testified he went to Ralston immediately after he was injured, and Ralston said he saw the auto coming and swung his lantern, gave her a stop signal, and thought the auto was stopping, then he took his eyes off of it. Both the engineer and fireman testified that the bell on the engine was ringing. There were three railway tracks in the street crossed over by the automobile before it ran into the tank. There was uncontradicted evidence that the automobile slowed up after it came into Sixth Street, and that it almost stopped at the third track it passed over when it was 30 to 40 feet from the track on which the engine and tank were moving. The engine and tank were 105 feet long. Measurements made after the accident showed that when Ralston was struck the forward end of the tank was still in the paved street and 13 feet from the further curb.

The negligence of appellant alleged and relied on was the failure to stop when, as Ralston claims, he gave the fireman a stop signal; however, he further alleges that Miss Jones was negligent in causing her automobile to strike him, "and as a result thereof, and of defendant's negligence aforesaid concurring therewith," he received the injuries.

After each of the parties had adduced evidence and rested, appellant moved for a directed verdict in its favor on the ground that the negligence charged against it was not the proximate cause of the injury, that "the act of Miss Jones, the driver of the automobile in question, was an independent, intervening and efficient cause which broke the causal connection between the negligence of the defendant, if any, and produced the injuries." The motion was denied. Appellant's counsel excepted to the ruling, and thereafter submitted requests for instructions, to the jury raising the same proposition embodied in its motion for directed verdict. These were denied, exceptions were saved, and the court did not embody the proposition so requested in its instructions. These rulings are specified and relied on as error.

Counsel, admitting for purpose of argument only that Ralston gave the stop signal to the fireman and he negligently failed to obey it, contend that the other facts not in dispute clearly and conclusively show that the negligence of Miss Jones was the proximate cause of the injury to Ralston, and that the court, therefore, erred in denying appellant's motion for a directed verdict. As we have seen, opposing counsel insist that it is a case of concurring negligence—that if appellant had not been negligent in failing to stop the tank in obedience to Ralston's timely stop signal it would not have been in the street and the auto could not have run into Ralston, therefore, the concurring negligence of appellant and Miss Jones caused the injury. It is equally within reason to say that although appellant was guilty of negligence as charged, still the tank would have moved on across the street without harm to Ralston, if Miss Jones had not been guilty of negligence, therefore, her act was the cause of the injury. But the law in its inquiry does not supplant established facts with speculative deductions. If it appear certain that some other negligent act than that charged, of a legally responsible person acting independently, intervened and his act was the direct cause of the injury, then the law regards the intervening act, if it could not have been anticipated by a reasonably prudent person, as the proximate cause, and the act charged as the remote cause for which there is no liability. Cooley on Torts (2d Ed.) p. 73, says:

"It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is, that in law the immediate and not the remote cause of any event is regarded;

1028

and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote cause. The explanation of this maxim may be given thus: If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. The chief and sufficient reason for this rule is to be found in the impossibility of tracing consequences through successive steps to the remote cause, and the necessity of pausing in the investigation of the chain of events at the point beyond which experience and observation convince us we cannot press our inquiries with safety. To the proximate cause we may usually trace consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the attempt at exact conclusions futile. A writer on this subject (Addison on Torts, p. 6) has stated the rule in the following language: If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

Wharton on the Law of Negligence, § 134, says this on the subject:

"Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a non-conductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured. I may be liable to him for my negligence in getting him into difficulty, but I am not liable to others for the

negligence which he alone was the cause of making operative."

Shearman and Redfield on the Law of Negligence (5th Ed.) states the principle thus (section 26):

"The breach of duty, upon which an action is brought, must be not only the cause, but the *proximate cause,* of the damage to the plaintiff. * * * The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition."

After stating (section 32) that the connection between a defendant's negligence and the injury may be broken by either a supervening or a responsible intervening cause, the authors say:

"It is a responsible one, if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation."

The point has been elaborately discussed in many adjudicated cases in affirmance of the principles above stated.

In Louisiana Mut. Insurance Company v. Tweed, 7 Wall. 44, 52, 19 L. Ed. 65, Mr. Justice Miller said:

"One of the most valuable of the criteria furnished us by these authorities, is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

Also, Ætna Insurance Company v. Boon, 95 U. S. 117, 130, 132, 24 L. Ed. 395; Cole v. German S. & L. Soc. (C. C. A.) 124 F. 113, 63 L. R. A. 416; Teis v. Smuggler Mining Co. (C. C. A.) 158 F. 260, 15 L. R. A. (N. S.) 893; Mendelson v. Davis (C. C. A.) 281 F. 18; Davis v. Schroeder (C. C. A.) 291 F. 47; Jennings v. Davis (C. C. A.) 187 F. 703; Chicago, St. P., M. & O. Railway Company v. Elliott (C. C. A.) 55 F. 949, 20 L. R. A. 582. Judge Jenkins, speaking for

the Seventh Circuit in Goodlander Mill Co. v. Standard Oil Co., 63 F. 400, 405, 27 L. R. A. 583, said of the inquiry in such a case:

"The test is: Was the intervening efficient cause a new and independent force, acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation, although it may have remotely contributed to the injury as an occasion or condition?" Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117; Hinnant v. Atlantic Coast L. R. Co., 202 N. C. 489, 163 S. E. 555; Haarstrich v. Oregon Short L. R. Co., 70 Utah, 552, 262 P. 100; Georgia Ry. & P. Co. v. Bryans, 35 Ga. App. 713, 134 S. E. 787; Anderson v. Baltimore & O. R. Co., 74 W. Va. 17, 81 S. E. 579, 51 L. R. A. (N. S.) 888.

The evidence bearing on the inquiry of proximate cause not being in conflict, the motion of appellant for a directed verdict presented a question of law for the court, and we think it erred in its ruling. The motion should have been sustained. Cole v. German S. & L. Soc., supra; Teis v. Smuggler Mining Co., supra; Atchison, T. & S. F. Railway Company v. Calhoun, 213 U. S. 1, 8, 29 S. Ct. 321, 53 L. Ed. 671.

Reversed and remanded.

McDERMOTT, Circuit Judge (concurring in the order of reversal).

The majority opinion recites the facts accurately and fairly; it states the nebulous rule of proximate cause aptly and succinctly. But I cannot agree with the holding that the negligence of the fireman was, as a matter of law, not the proximate cause of the injury; nor with the instruction of Judge Johnson that if the signal was received in time to stop, it was the proximate cause. I think the question was for the jury.

The fireman admits he was looking out of the cab window, saw the automobile coming toward the crossing, and saw the brakeman signal; the jury found, against what seems to me the greater weight of the evidence and the probabilities, that the signal was for the locomotive to stop. The fireman ignored the signal; in so doing, he violated the cardinal rule of railroad operations, and was clearly guilty of negligence. The majority opinion holds, as a matter of law, that the fireman could not reasonably foresee that a collision would result from his neglect. If he should have foreseen such result, the fact that the driver of the car was also negligent, is no excuse.

I think a jury might very reasonably conclude that the fireman should readily have foreseen that a collision with the approaching car would result from his neglect. The majority hold that a jury of reasonable men could not come to that conclusion. With that holding, I am not in accord. We all know that drivers are negligent in approaching railroad crossings, for the reports are full of cases where drivers attempt to cross when trains are in full view. The automobile almost stopped when it approached the crossing; but that fact does not inevitably lead to the conclusion that all danger of collision had passed, for drivers sometimes become confused when coming to a crossing with a train approaching. Nor does that fact justify a disregard of a command to stop.

Nor am I in accord with Judge Johnson's charge that if the fireman saw the signal in time to stop, his failure to heed the signal "would become the proximate cause of the injury." I think the question of whether the fireman might reasonably have foreseen that a collision with this car would result if he did not stop, should have been submitted to the jury in substantially the language of the instructions requested by appellant, to wit, that there could be no recovery unless the jury found "that the fireman, in the exercise of ordinary care, should have anticipated and expected that if the engine entered upon the intersection the automobile would continue on its course and collide with the engine or its tender."

I see no reason why either Judge Johnson or the majority opinion should take this ordinary fact question from the jury. What the mythical "reasonable man" should or should not do, under admitted facts, is peculiarly a jury question; the experience of jurors enables them to appraise, quite as accurately as judges, the conduct of ordinary men. Such questions should go to the jury unless but one conclusion can be drawn from the facts. I have grave doubts as to whether the fireman was signalled to stop; if he was, it is a reasonable assumption that he would have grasped that the signal was given to prevent what did happen, a collision with an approaching car, which all railroad men have come to anticipate and dread. For failure to submit that question to the jury, and for that reason alone, I think the cause should be reversed.