67 So.2d 185 (1953)
LOFTIN et al.
v.
WILSON.
MILLS et al.
v.
WILSON.
Supreme Court of Florida, Special Division A.
March 10, 1953.
Rehearing Denied September 21, 1953.
*187 Loftin, Anderson, Scott, McCarthy & Preston, Miami, Russell L. Frink, Jacksonville, Robert H. Anderson and William C. Steel, Miami, for Scott M. Loftin and John W. Martin, as trustees of property of Florida East Coast Ry. Co.
Walton, Hubbard, Schroeder, Lantaff & Atkins and Dixon, DeJarnette & Bradford, Miami, for H.L. Mills and Kathryn Mills, individually and as copartners comprising copartnership trading and doing business as H.L. Mills Const. Co.
Nichols, Gaither & Green, Perry Nichols and William Clinton Green, Miami, for appellee.
WHITE, Associate Justice.
These appeals bring for review a judgment entered upon the verdict of a jury for $300,000 against two of three defendants in an action for personal injuries. We are called upon to decide whether or not the verdict is excessive.
Plaintiff in the court below, appellee here, one Wilson, sustained serious bodily injuries as a result of a "crossing accident". At the time he was a "trainman" employed on a work train of Florida East Coast Railway, one of the appellants. The train collided with a ten ton Diesel automobile truck belonging to H.L. Mills and Kathryn Mills a co-partnership doing business under the firm name of "H.L. Mills Construction Company", the other appellant.
The work train was engaged in spraying weeds and undesirable growth upon the railroad track. The spraying operation and the spraying equipment was under the control of the third defendant, Allied Chemical and Dye corporation. The operation of the train was under the supervision of the employees of the railroad company, including Wilson, the injured plaintiff. In the order of its approach along the track, toward the crossing in question,, the train consisted of, first, the spray car, next two tank cars filled with the chemical solution used in spraying the weeds, next a Diesel locomotive, proceeding forward, and last a "caboose". Wilson was standing on top of the spray car, passing signals back to the engineer to regulate the progress of the train. As a result of the collision, the spray car was derailed and thrown some distance from the track. Wilson fell to the ground amid the wreckage of the truck and the spray car. He was painfully and permanently injured. His right foot was crushed and mangled. Bones in each hand were fractured. He was saturated by the chemical solution and lost several teeth. He lost some of his hair temporarily. In an effort to save his foot, skin grafts were made from his uninjured leg. He was hospitalized 131 days and had to use crutches for more than a year. He was in court at the time of the trial wearing a specially built shoe, designed to partially compensate for the fact that only a portion of his foot remained.
Wilson sued the three defendants upon a claim of joint liability. His claim against his employer, the railroad company, was upon the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. His claim against the construction company was upon common law principles of tort liability. For similar cases see: Southern Pac. Co. v. Ralston, 10 Cir., 1933, 62 F.2d 1026; Id., 10 Cir., 67 F.2d 958; Southern R. Co. v. Blanton, 1937, 56 Ga. App. 232, 192 S.E. 437; Id., 1938, 59 Ga. App. 252, 200 S.E. 471; Id., 1940, 63 Ga. App. 93, 10 S.E.2d 430; Howard v. Atlantic Coast Line Ry. *188 Co., 1951, 84 Ga. App. 307, 66 S.E.2d 87; Casseday v. Baltimore & O. Ry. Co., 1941, 343 Pa. 342, 22 A.2d 663; Missouri-Kansas-Texas R. Co. v. McKinney, Tex.Civ. App., 1939, 126 S.W.2d 789; Id., 1941, 136 Tex. 75, 145 S.W.2d 1081.
Questions regarding the right to join defendants in such cases as well as questions of severance, are discussed in Way v. Waterloo etc. Co., 1947, 239 Iowa 244, 29 N.W.2d 867, 174 A.L.R. 723; and Annotation 174 A.L.R. 734.
The chemical company was exonerated from liability in the lower court and no point is made here regarding the propriety of that action. To all intents and purposes, it has been dropped as a party to the proceedings.
The injury occurred October 20, 1949. The verdict was entered January 16, 1952. Hospital and medical expenses incurred prior to the trial amounted to $7791.50. There was proof at the trial that plaintiff would need further medical attention, although a basis for computing the value thereof was left to some uncertainty. In every case, plaintiff must afford a basis for a reasonable estimate of the amount of his loss and only medical expenses which are reasonably certain to be incurred in the future are recoverable.
The construction company has computed the amount of this item at $2900.00. The railroad company computed it at $8160. The latter figure includes $5,280.00, estimated as being the cost of purchasing the specially designed shoes to be worn by plaintiff throughout the period of his future life expectancy.
At the time of the injury, plaintiff was earning $443 per month. He had been unable to return to gainful employment, so that the sum of $11,800 was due him on the date of the trial for earnings previously lost.
At the time of the trial plaintiff was 46 years of age. It was stipulated that his life expectancy at that time was 24 years and 150 days.
It is contrary to reason to assume that Wilson must remain in idleness the balance of his life on account of his injuries. Serious though they were, his earning capacity is not completely gone. He had been a railroad employee for seven years. Prior to that time he was a bookkeeping machine operator and a teller in a bank. He is a high school graduate. Plaintiff's counsel suggested in his summation, that the jury compute the value of his diminished earning capacity by assuming that he could earn an average of $100 per month, notwithstanding his injuries. Thus, his net loss per annum would amount to $4,116. When reduced to present worth, using the annuity value of One Dollar, at 3% interest for an individual 46 years of age, the result is $64,522.41.
When computing the present worth of future loss of earning power by the use of an annuity table, it may be proper to consider certain factors. Such a formula assumes that the individual in question will live the exact period of the life expectancy of an individual of that age as fixed by the mortality tables, and that the value of his lost earning capacity will be exactly the same each year for that period of time in the future. Mortality tables do not presume to establish as a certainty that any person of the age indicated will live for the identical period specified. A mortality table is to be used only as a factor with all the other factors shown by the evidence with which the jury is to determine as best it can the life expectancy of the person in question. With the expectancy indicated by the table as a basis of calculation, the jury must consider the person's health, habits, occupation, surroundings and any other elements, which in his case will be likely to operate for or against his expected length of life, as well as the fact that his earning power may diminish as his physical and mental strength decline. Due allowance should be made for the decline of earning power because of the abatement of mental and physical vigor consequent upon the passage of time. Littman v. Bell, etc. Co., 1934, 315 Pa. 370, 172 A. 687.
*189 In addition, it may be in order to make allowance for the fact that no individual has a practical capacity for working each week during the remainder of his life. Holidays, illnesses, and at least some vacations, are essential to the maintenance of earning capacity. Renault Lumber Yards v. Levine, Fla. 1950, 49 So.2d 97. Within limits, the jury likewise may take into consideration opportunities for promotions and prospects for increased capacity as shown by the evidence. See 25 C.J.S., Damages, § 87, p. 625; 15 Am.Jur. p. 779, Sec. 338; Annotation 15 A.L.R.2d 418.
When the amounts previously mentioned are summarized, the following result is obtained:

Medical expense incurred $ 7,791.50
Medical expense to be incurred in future 8,160.00
Loss of earnings to date of trial 11,800.00
Diminished earning capacity 64,522.41
 __________
 Total $92,273.91

When this sum is paid to the plaintiff, it is seen that he has been made whole, so far as his monetary loss is concerned. His medical expenses, both past and future, have been paid by the tort-feasor. He has been reimbursed for every dollar of his lost earnings before the trial and in addition has been paid a sum which will afford him full compensation for the remainder of his life for the diminished earning power occasioned by the permanency of his injury.
In addition, plaintiff is entitled to compensation for his physical pain and suffering directly resulting from the wrongful acts of the defendants, if any, including pain and suffering incident to surgical operations or medical treatment.
Pain and suffering have no market price. They are not capable of being exactly and accurately determined, and there is no fixed rule or standard whereby damages for them can be measured. The award for pain and suffering must be limited to compensation. However, compensation in this connection is not to be understood as meaning price in dollars and cents as one might charge another to endure the same pain as has been suffered by the plaintiff. No sane individual would deliberately go through the plaintiff's experiences in this case for all the money in the world. Nor is such compensation to be understood as meaning value as one would engage a clerk or laborer on a per diem basis. Compensation in this connection is to be understood as describing an allowance looking toward recompense for, or made because of, the suffering consequent upon the injury. Any sum arrived at on the basis of another concept results in a conclusion opposed to legal principles governing the award of compensatory damages for personal injury.
The remainder of the verdict here of $207,000 represents an award for "pain and suffering". A comparison with other cases is sometimes fraught with danger because, of course, each case is different and must of necessity be measured in the light of the circumstances peculiar to it. Nevertheless, it is recognized that reference to amounts awarded in similar cases has at least a limited value. See Annotation 16 A.L.R.2d 3.
In a recent case decided by this court an award of $260,000 for severe and lasting injuries was set aside and a new trial ordered because the amount was considered excessive. Florida Power & Light Co. v. Watson, Fla. 1951, 50 So.2d 543.
Of course, a comparison of the injuries suffered by the individuals involved in that case and the present one cannot be made with satisfactory results. No doubt the injured person in that case and the appellee here would be unable to agree which had the more serious condition. Probably neither would be willing to exchange places with the other. At the same time, however, this court cannot consistently ignore the precedent it established in that case.
In a case before another court, an award of $225,000 to a railroad employee for the loss of both legs was reduced to $150,000. Bartlebaugh v. Pennsylvania R.R. Co., 1948, 150 Ohio St. 387, 82 N.E.2d 853.
*190 In still another case, an award of $130,000 to a railroad employee for the loss of both feet was reduced to $100,000. McKinney v. Pittsburgh etc. Co., D.C.N.Y. 1944, 57 F. Supp. 813.
In another case, an award of $80,000 to a railroad employee for the loss of one leg was reduced to $50,000. Joice v. Missouri-Kansas-Texas R. Co., 1945, 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383.
In another case before the Supreme Court of Florida, an award of $75,000 for serious fractures of plaintiff's leg and right arm and injuries to his hip and back was reduced to $60,000. Renault Lumber Yards v. Levine, Fla. 1950, 49 So.2d 97.
In another case before a Federal Court an award to a railroad employee of $60,000 for loss of one leg was reduced to $40,000. Cunningham v. Pennsylvania R.R. Co., D.C.N.Y. 1944, 55 F. Supp. 1012.
In a case before another court an award of $50,000 to a railroad employee for the loss of one leg was reduced to $27,555. Smiley v. St. Louis etc. Co., 1949, 359 Mo. 474, 222 S.W.2d 481.
A study of those cases as well as the many others reviewed in the annotation to which reference has been made, 16 A.L.R.2d 3, leads to the conclusion that the award here of more than $200,000 for "pain and suffering" alone is far out of line.
The fact that the verdict here is excessive is further demonstrated by observing that $207,000, the amount awarded for "pain and suffering" alone, invested at 3% per annum, simple interest, is the "present worth" of a payment of more than $13,000 each year throughout plaintiff's life expectancy as fixed by the mortality tables. It is also interesting to note that when the sum is invested at 3% per annum it will yield a return to the plaintiff of an amount in excess of his entire annual earnings prior to his injury, leaving the principal amount intact at his death to pass to his heirs. Such a result is contrary to the original intention of the law providing compensatory damages for those who have suffered personal injuries.
Thus, a consideration of the amount of the award in this case, in the light of precedent, leads to the conclusion that its determination was governed by sentimental or fanciful standards. It is not necessary that a court inquire and declare what wrongful influence or failure of duty brought about an excessive verdict. Where the amount of an award is such as to indicate passion or prejudice, a new trial must be ordered. Alabama Gas Co. v. Jones, 1947, 244 Ala. 413, 13 So.2d 873; Florida Power & Light Co. v. Watson, supra; S.A. Freel Distributing Co. v. Lenox, 147 Fla. 550, 3 So.2d 157.
To what amount of damages is the plaintiff in this case entitled? That is for a jury to decide, and not this court. A jury decision in such a case must mean, however, a decision free from sentimental or emotional considerations. An appellate court may sanction a verdict of a jury only when it has been reached by an unprejudiced and unimpassioned analysis of the evidence with a conscious desire to apply the law in the case to the true facts as shown by the evidence. Where a verdict is so excessive as to indicate that other considerations have influenced the jury, justice has been thwarted and the verdict cannot be sanctioned.
In the case of Remsberg v. Mosley, Fla. 1952, 58 So.2d 432, 433, this court said that a new trial "on the question of damages only should not be granted unless liability on the part of defendant is clearly shown and it is not deemed necessary for any reason to try that issue again". In the case at bar, liability on the part of the construction company is clearly shown and there is no occasion for re-trying the question of liability of that defendant. The driver of the truck, in approaching the railroad crossing at the time of the accident, showed a wanton and reckless disregard for his own safety, as well as for that of several individuals on the spray car. There was *191 nothing unusual about the crossing. It was in a rural section and the train was in plain view at all times. It had the right-of-way. See Southern Railway Co. v. Mann, 91 Fla. 948, 108 So. 889; Atlantic Coast Line R. Co. v. Watkins, 97 Fla. 350, 121 So. 95; Roberts v. Powell, 137 Fla. 159, 187 So. 766. By the exercise of the slightest attention to his surroundings, the driver of the truck could have seen the approaching danger and permitted the train to pass without event.
It is such mental lethargy on the part of the drivers of motor vehicles upon public highways that is producing an appalling accident rate. Under the circumstances it is no surprise that the amount of the verdict bears characteristics of having punitive implications.
On the other hand, liability of the railroad company is not clearly shown. Those in charge of the train had a right to assume that the truck driver would stop a safe distance from the crossing. When they were apprised to the contrary, they were faced with an emergency brought about through no fault of their own.
The law recognizes that upon the happening of a sudden and unexpected danger, the same responsibility does not arise as when the circumstances show that the danger may reasonably have been inferred. So that where one is confronted by a sudden emergency he is not held to the same accuracy of judgment as is required under ordinary circumstances. In other words, such a person is not required in an emergency to exercise the same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties, but is only required to exercise such judgment as a person of ordinary reason and prudence would exercise under similar extraordinary circumstances.
Whether or not the accident would have occurred under the circumstances notwithstanding some act or omission on the part of the railroad company is questionable. Prosser on Torts, p. 322. Of course, the fact of causation is never capable of mathematical proof, since no man can say with absolute certainty what would have occurred if another had acted otherwise. Defendant's conduct in an action for personal injuries is considered a cause of the event if it was a material and substantial factor in bringing it about. Whether it is such a substantial factor is for the jury to determine, unless the issue is so clear that reasonable men could not differ. Prosser on Torts, p. 324; 2 Restatement of Torts, p. 1159, Sec. 431. After a jury has decided the issue, "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury." Tennant v. Peoria etc. Co., 1943, 321 U.S. 29, 64 S.Ct. 409, 412, 88 L.Ed. 520.
It follows that a new trial should be granted only upon the issue of damages against the construction company and upon both issues of liability and damages against the railroad company. We do not decide whether the verdict of a jury upon another trial, either for the plaintiff or for the defendant, regarding negligence vel non of the railroad company will meet the test thus prescribed by the United States Supreme Court in such cases.
Having come to the conclusion that there should be a new trial, it is proper that other questions presented on this appeal, which might arise in a second trial, be determined now.
The construction company contends that the lower court erred in not allowing each member of the co-partnership three peremptory challenges of jurors. See Statute 54.11, F.S.A. The lower court ruled that the real "party" to the litigation was the partnership entity and that no more than three peremptory challenges were allowable, regardless of the number of individuals making up the firm. We hold that the ruling was correct.
The railroad company assigns as error the action of the trial court in denying its motion for a mistrial made in the midst of the trial because of the misconduct of a *192 juror. After the trial was underway, counsel for the construction company, in the absence of the jury, made the announcement that the Millses had discovered that one of the jurors had had some transactions with the construction company "and that in that business transaction there was some unpleasantness between the parties, and differences between them, that would possibly tend to prejudice (the juror) against those parties; that a dispute arose as to some money that was required to be paid to (the juror) from Mills, and finally a settlement was made, * * * that (the juror) concealed that matter, possibly not intentionally, but nevertheless the inference is that he did know that he was concealing it."
The construction company moved that the juror be excused and that the trial continue before the five remaining jurors. Later, however, the construction company waived the objection. The railroad company stood upon a motion on its own behalf to declare a mistrial. The motion was denied.
Apparently, at the time no one questioned the facts as thus disclosed, as the Court made this observation: "Assuming the representation can be and would be supported by sworn evidence, I don't think it is sufficient".
After verdict, the ruling was relied upon by the railroad company as ground for a new trial. The motion for new trial likewise was denied.
In this regard the following statement from Pearcy v. Michigan, etc. Co., 1887, 111 Ind. 59, 12 N.E. 98, 99, 60 Am. Rep. 673, is approved:
"* * * The examination of a juror on his voir dire has a two fold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. * * *
"It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct, is prejudicial to the party, for it impairs his right to challenge."
Also, see Jones v. Imperial Garages, 1944, 174 Or. 49, 145 P.2d 469; Texas Emp. Ins. Ass'n v. Wade, Tex.Civ.App. 1946, 197 S.W.2d 203; Cradick v. Reich, 1947, 77 Cal. App.2d 667, 176 P.2d 70, and 39 Am.Jur. p. 65, Sec. 45.
The construction company was in no position to take advantage of the juror's misconduct, since its owners should have known, as well as the juror, at the time of the voir dire examination, of the previous dispute between them. The owners could not sit by in silence and then complain of their own oversight after having accepted the jury.
However, the railroad company is in a different position. It had no way of knowing about the dispute except from the answers the juror gave on his voir dire examination.
It may be argued with merit that animosity on the part of the juror toward the construction company would have no bearing on the juror's decision regarding wrongdoing on the part of the railroad company. However, the construction company and the railroad company were charged with having concurrently committed a tort, for which the amount of damages fixed by the jury was to be assessed against each. Therefore, it cannot be said that the misconduct of the juror had no bearing on his decision so far as the railroad company was concerned.
In many instances rulings upon such occurrences during the trial of a law suit *193 come within the sound discretion of the trial judge. But, where facts exist as assumed by the judge here, followed by a verdict so excessive in amount as to indicate that the jury has been influenced by improper considerations, it is the duty of the trial judge to grant a new trial.
At the trial the railroad company called as its witness an air brake expert, who testified concerning tests made by which the witness had determined the space in which a similar train might be stopped by the application of the emergency brake. Based upon that proof, the railroad company requested the following charge:
"The distance that a train can be stopped when the emergency brakes are applied under a given set of circumstances is essentially an engineering question and the law in this state is that such conclusions should be determined by experts as the courts trust experts in their respective lines for an answer to such questions."
The trial judge refused to give the instruction and the ruling has been assigned as error.
The requested instruction was misleading and the trial judge was correct in his ruling. The thought conveyed by the instruction had a tendency to eliminate from the jury's consideration the principle that juries likewise may judge such matters by common sense and every day experiences.
The judgment is affirmed as to H.L. Mills and Kathryn Mills, co-partners doing business under the firm name of H.L. Mills Construction Company, on the issue of liability, and is reversed on the issue of damages. A new trial is ordered on the issue of damages alone. The judgment is reversed as to Scott M. Loftin and John W. Martin, as Trustees of the property of Florida East Coast Railway, a corporation, and a new trial is ordered on all issues.
Affirmed in part and reversed in part.
TERRELL, Acting Chief Justice, and SEBRING and ROBERTS, JJ., concur.