Linda GUINN, Plaintiff,

v.

**ASTRAZENECA PHARMACEUTI-
CALS LP, et al., Defendants.**

Case No. 6:07–cv–10291–Orl–22DAB.

United States District Court,
M.D. Florida.

Jan. 30, 2009.

**1240**

Benjamin A. Krass, Matthew F. Pawa, Law Offices of Matthew F. Pawa, PC, Newton Centre, MA, Larry M. Roth, Larry M. Roth, PA, Orlando, FL, Buffy Martines, Richard Laminack, Thomas Pirtle, Laminack, Pirtle & Martines, F. Kenneth Bailey, Jr., Fletcher Vines Trammell, K. Camp Bailey, Michael W. Perrin, Robert W. Cowan, Bailey, Perrin & Bailey, LLP, John Roberson, Carrigan, McCloskey & Roberson, LLP, Houston, TX, for Plaintiff.

Steven B. Weisburd, David Venderbush, Dechert LLP, Austin, TX, Stephen J. McConnell, Dechert LLP, Philadelphia, PA, Jane Thorpe, Alston & Bird, LLP, Atlanta, GA, Chris S. Coutroulis, Robert L. Ciotti, Carlton Fields, PA, Tampa, FL, Robert C. Brock, Rushton Stately Johnston & Garrett, PA, Montgomery, AL, Earl B. Austin, Baker Botts LLP, Dallas, TX, for Defendants.

### ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court for consideration of AstraZeneca's Motion for Summary Judgment (Doc. 12), to which Plaintiff Guinn has responded in opposition (Doc. 16).[1] Oral argument on the motion was held on January 13, 2009. Upon carefully considering the legal memoranda, exhibits, deposition testimony, relevant case law, and the oral argument, the Court determines that AstraZeneca's motion is due to be **GRANTED.**[2]

### I. BACKGROUND

Seroquel, a prescription drug manufactured and sold by AstraZeneca Pharmaceuticals, was first approved for use in the United States by the Food and Drug Administration (FDA) in 1997.[3] The drug, known chemically as quetiapine fumarate, is still on the market today as one of a number of medications known as second-generation, or "atypical," antipsychotics. Although initially indicated only to treat the "manifestations of psychotic disorders," including schizophrenia,[4] Seroquel has since been approved for various uses in patients suffering from bipolar disorder.[5]

Several years ago, people who had been prescribed Seroquel by their doctors began filing lawsuits against AstraZeneca, primarily alleging that they had developed diabetes and other related disorders as a result of their ingestion of the drug. In July, 2006, the Judicial Panel on Multidistrict Litigation transferred ninety-two actions involving alleged injuries resulting from the use of Seroquel to this Court for consolidated and coordinated pretrial proceedings.[6] Since that time, this consolidat-

---

1. Both the motion and the response were filed under seal because they contained information designated as confidential by one or both parties.

2. AstraZeneca set forth numerous grounds for summary judgment in its motion; however, given the Court's ruling on specific medical causation, it was unnecessary to reach the majority of the issues AstraZeneca raised.

3. *See* Ex. 5 to Doc. 1113, *In re Seroquel Prods. Liab. Litig.,* Case No. 6:06–md–1769–Orl–22DAB.

4. *Id.*

5. *See* Exs. 21, 27, 29 to Doc. 1113, *In re Seroquel Prods. Liab. Litig.,* Case No. 6:06–md–1769–Orl–DAB.

6. *See In re Seroquel Prods. Liab. Litig.,* 447 F.Supp.2d 1376 (J.P.M.L.2006).

ed action has grown to include the personal injury claims of several thousand people from across the nation, including the plaintiff in the present case, Linda Guinn.

Linda Guinn is a 61–year–old former legal secretary who lives in Palm Bay, Florida with her mother, sister and adult son. Guinn has been unemployed due to disability for approximately the last twenty years, during which time she has been treated for numerous medical ailments including schizophrenia, bipolar disorder, depression, epilepsy, hypertension, high cholesterol, back and knee pain, gastroesophageal reflux disease, arthritis, degenerative disc disease and, most recently, diabetes.[7] Her health history also demonstrates that she is or has been on several medications,[8] has had dramatic fluctuations in weight over the course of her adult life,[9] and is a heavy smoker, having smoked at least a pack of cigarettes every day for the last thirty years.[10]

Guinn was first prescribed Seroquel in May, 2002 by Dr. Guido Nodal, a board-certified psychiatrist, when she presented to him in the hospital with paranoia, hallucinations and other symptoms of mental illness.[11] At that time, Dr. Nodal diagnosed her with paranoid schizophrenia, and started her on 200 mg of Seroquel per day.[12] She was taking 400 mg per day by the time she was discharged from the hospital.[13] Guinn returned for two follow-up visits with Dr. Nodal over the next few weeks. On the first of these visits, Dr. Nodal increased the dosage to 600 mg per day in response to Guinn's complaint that she was still having paranoid delusions.[14] By the second visit, Guinn reported that she was symptom-free, and Dr. Nodal made no dosage adjustments at that time.[15]

In June, 2002, Guinn relocated to another town and enlisted the care of Dr. Vernice Ragsdale, a primary care physician. Dr. Ragsdale routinely monitored Guinn's blood-glucose levels until she ceased seeking care from him in 2004.[16] Shortly after becoming a patient of Dr. Ragsdale's, Guinn sought psychiatric treatment from Circles of Care, a local behavioral health center, where her Seroquel dosage was eventually increased to 800 mg per day.[17] Although several health care providers initially treated Guinn at the center, Nancy Thompson, a nurse practitioner, assumed primary responsibility for her treatment in 2003. In February, 2006, Guinn's primary care provider diagnosed her with diabetes.[18] In May of that year, Nurse Thompson began tapering Guinn's Seroquel dose in response to Guinn's request to switch her to a different drug.[19] By December,

7. *See* Doc. 12, Exs. 8–17.

8. Guinn Dep. 79:17–22.

9. *See* Expert Report of Jennifer B. Marks, M.D., Ex. 8 to Doc. 1160, *In re Seroquel Prods. Liab. Litig.*, Case No. 6:06–md–1769–Orl–22DAB, at 5–6 (detailing Guinn's weight history since 1998); *see also* Daubert Hr'g Tr. 190, Jan. 15, 2009 (Doc. 1216, *In re Seroquel Prods. Liab. Litig.*, Case No. 6:06–md–1769–Orl–22DAB)(testimony of Dr. Marks acknowledging Guinn's self-reported weight of 111 pounds in 1988, and confirming that Guinn had a recorded weight of over 200 pounds in 1994).

10. Guinn Dep. 158:13–159:6.

11. Nodal Dep. 23:16–25.

12. *Id.* at 36:20–24, 39:7–16.

13. *Id.* at 40:20–24.

14. *Id.* at 45:7–22.

15. *Id.* at 46:2–12.

16. Ragsdale Dep. 88:9–12.

17. Thompson Dep. 39:11–20.

18. Ex. 10 to Doc. 12.

19. Thompson Dep. 63:1–3.

2006, Guinn was no longer taking Seroquel.[20]

Guinn initiated this lawsuit against AstraZeneca in April, 2006, asserting claims for strict product liability, negligence, fraud and civil conspiracy.[21] AstraZeneca now seeks summary judgment as to each of Guinn's claims. It is this motion to which the Court now turns.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the movant bears the initial burden of showing that no genuine issue of material fact remains for trial. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Zivojinovich v. Barner*, 525 F.3d 1059, 1066 (11th Cir.2008). To avoid summary judgment, the opposing party must come forward with specific facts in dispute that are material and of a substantial nature. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory allegations, evidence that is not significantly probative, and personal opinions will not suffice to defeat a motion for summary judgment. *Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 949 (11th Cir.1993). Though the opposing party must present specific evidence showing a question of material fact, the Court must draw all reasonable factual inferences in favor of the opposing party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS [22]

The overarching issue raised by AstraZeneca's summary judgment motion is whether Guinn can carry her burden of establishing medical causation. Indeed, because establishing medical causation is critical to each of Guinn's claims, AstraZeneca is entitled to judgment as a matter of law as to all claims set forth in the complaint if she fails to establish a genuine issue of material fact with regard to whether her ingestion of Seroquel caused her to develop diabetes.

▪ In order to establish medical causation in a toxic tort case such as this one, a plaintiff must show both that exposure to the alleged toxic substance can cause a particular disease (general causation), and that exposure to the alleged toxic substance was a cause of his or her individual injury (specific causation). *See* Mary Sue Henefin, et al., *Reference Guide on Epidemiology*, *in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 444 (Federal Judicial Center, 2d ed. 2000); *see also McClain v. Metabolife*, 401 F.3d 1233, 1237 (11th Cir.2005) ("Plaintiffs must prove the toxicity of the ephedrine/caffeine combination and that it had a toxic effect on them...."). Thus, in this action, Guinn must show both that Seroquel can generally cause diabetes and that Seroquel was a specific cause of her diabetes. Having carefully reviewed the record in this case, however, the Court finds that even assuming there is a triable issue with regard to general causation, Guinn has failed to come forward with evidence establishing a genuine issue of material fact as to whether Seroquel was the specific cause of her injury.[23]

---

**20.** Joint Pretrial Statement, Doc. 22 at 19.

**21.** Guinn's breach of warranty claims were earlier dismissed by stipulation. *See* Doc. 11.

**22.** The parties have stipulated that all of Guinn's claims are substantively governed by Florida law. *See* Joint Pretrial Statement, Doc. 22 at 19.

**23.** On January 26, 2009, Plaintiffs filed a motion seeking additional discovery with respect to recent correspondence between AstraZeneca and the FDA, suggesting that such discovery may uncover evidence pertinent to the Court's consideration of this summary judgment motion. *See* Doc. 41. In the Court's view, any evidence uncovered by additional discovery related to the FDA correspondence

At the outset, the Court notes that in federal court, expert opinions must meet the admissibility guidelines announced by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert,* the Supreme Court set forth a non-exhaustive list of relevant factors to consider in determining whether the methodology employed by an expert is reliable. *Id.* at 593–94, 113 S.Ct. 2786. The factors include whether the methods can be tested or have been subject to peer review, the potential rate of error, and whether the methods are generally accepted. *Id.* Applying these principles in *Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998), the Eleventh Circuit held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. *Id.* Second, the methodology used must be reliable as determined by the *Daubert* inquiry. *Id.* Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Id.*

In this case, the specific causation testimony of Dr. Jennifer Marks[24] does not satisfy *Daubert*'s reliability requirement. Fundamentally, as the Court will discuss in further detail below, Dr. Marks was unable to articulate any scientific methodology for assessing whether, and to what extent, Seroquel contributed to Guinn's weight gain and diabetes, ultimately forcing her to draw an entirely speculative conclusion about Seroquel's role in Guinn's disease. Indeed, Dr. Marks' bare assertion that Seroquel was a "substantial contributing factor" in Guinn's development of diabetes amounts to nothing more than inadmissible *ipse dixit,* as "the only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown,* 392 F.3d 1283, 1300 (11th Cir.2004) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). Therefore, Dr. Marks' specific causation opinion lacks the reliability required by *Daubert* and must be excluded.[25] Even if Dr. Marks' testimony was admissible, her opinions are insufficient to establish a triable issue as to whether Seroquel caused Guinn's diabetes, as the following discussion demonstrates.

likely would relate only to general medical causation, and, as such, would not impact the Court's decision herein.

24. Dr. Marks is Guinn's sole specific causation expert. Plaintiffs originally designated two experts to offer specific causation testimony in Guinn's case: Dr. Marks, an endocrinologist, and Dr. Perry, a psychiatrist. At the *Daubert* hearing, however, Plaintiffs did not offer Dr. Perry for examination, and further indicated that they did not intend to call him to testify at Guinn's trial. Daubert Hr'g Tr. 6, Jan. 14, 2009 (Doc. 31, *Haller v. AstraZeneca Pharms. LP, et al.,* Case No. 6:07–cv–15733–Orl–22DAB). Furthermore, the Court observes that, after being presented with new weight data pertaining to Guinn at his earlier deposition, Dr. Perry indicated a need to reevaluate Guinn's weight history before confirming his opinion in the case. Perry Dep. 310:24–311:2 (indicating that "part of what I

obviously need to do is reevaluate an analysis of these weights"), 313:18–19 (confirming that "I said I will go back and reevaluate these cycles in the weights as I move forward in this process"). Since that time, Plaintiffs have not submitted any supplemental report or affidavit from Dr. Perry. In view of these events, the Court has not considered any materials or testimony submitted by Dr. Perry as summary judgment evidence in this case.

25. The *Daubert* issues raised by Dr. Marks' testimony will be further developed by separate order. Furthermore, the Court notes that exclusion of Dr. Marks' testimony is itself a basis for granting summary judgment; Guinn has no other expert upon whose testimony she can rely to establish specific causation, and "[t]his type of proof *requires* expert testimony." *McClain,* 401 F.3d at 1237 (emphasis added).

**1244**

■ Florida product liability actions, whether sounding in negligence or strict liability, require proof of proximate cause. *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 87 (Fla.1976) (plaintiff must demonstrate proximate cause in order to hold manufacturer liable on theory of strict liability in tort); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir.2005) (Florida products liability law requires showing of proximate cause to sustain action based on negligence theory). Although the Florida courts have injected several different factors into the proximate cause analysis over the years,[26] the Supreme Court of Florida captured the essence of these factors when it held in *Jones v. Utica Mutual Ins. Co.*, 463 So.2d 1153 (Fla.1985), that "[i]n the ordinary negligence context, a defendant is liable for injury produced or substantially produced in a natural and continuous sequence by his conduct, such that 'but for' such conduct, the injury would not have occurred." *Id.* at 1156.

The test announced in *Jones* may not be suitable, however, for situations outside the "ordinary negligence context," such as those cases in which there is evidence of more than one cause of an injury. Indeed, it has long been recognized that "if dam-

ages are caused by the concurring force of a defendant's negligence and some other force for which he is not responsible, the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage." *De La Concha v. Pinero*, 104 So.2d 25, 27 (Fla.1958). In *Stahl v. Metro. Dade County*, 438 So.2d 14 (Fla. 3d DCA 1983), the court suggested that "[i]n [ ] so-called 'concurrent cause' cases ..., the Florida courts have abandoned *sub silentio* the 'but for' test and have employed instead a 'substantial factor' test for the obvious reason that adherence to the 'but for' test in this limited type of case leads to anomalous and unacceptable results." *Id.* at 18. According to the court, the "substantial factor" test required consideration of whether the defendant's conduct was a "material and substantial factor in bringing [the injury] about." *Id.* at 19 (quoting *Loftin v. Wilson*, 67 So.2d 185, 191 (Fla.1953)). Importantly, the *Stahl* court noted that the "substantial factor" test was to be applicable "only in those concurring cause cases where each of the said concurring causes could have alone produced the plaintiff's injury." *Stahl*, 438 So.2d at 19.

The Florida Standard Civil Jury Instructions [27] reflect the principles enunciat-

**26.** *See McCain v. Florida Power Corp.*, 593 So.2d 500, 502 (Fla.1992) ("The proximate causation element ... is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred."); *Sardell v. Malanio*, 202 So.2d 746, 747 (Fla. 1967) (approving of the district court's finding that in order to establish proximate cause "there must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said but for the act the injury would not have occurred.") (internal quotations omitted); *Loftin v. Wilson*, 67 So.2d 185, 191 (Fla.1953) ("Defendant's conduct in an action for personal injuries is considered a cause of the event if it was a material and substantial factor in bringing it about."); *Cone v. Inter*

*County Tel. & Tel. Co.*, 40 So.2d 148, 149 (Fla.1949) ("[W]hen the loss is not a direct result of the negligent act complained of, or does not follow in natural ordinary sequence from such act but is merely a possible, as distinguished from a natural and probable, result of the negligence, recovery will not be allowed.").

**27.** The Supreme Court of Florida issued an opinion formally approving and authorizing the publication of the Standard Jury Instructions for use in the Florida courts on April 19, 1967, recognizing that although "it would be inappropriate for the Court at this time to consider the recommended instructions with a view to adjudging that the legal principles embodied in the recommended instructions correctly state the law of Florida ... [t]he

ed in *Jones* and *Stahl.* For example, Instruction 5.1(a) teaches that proximate cause should be considered under the following test:

> Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, but for the negligence, the [loss] [injury] [or] [damage] would not have occurred.

Fla. Std. Jury Instr. (Civ.) 5.1(a). Likewise, instruction 5.1(b) incorporates the "substantial factor" test into a concurring cause instruction, as follows:

> In order to be regarded as a legal cause of [loss] [injury] [or] [damage], negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with [the act of another] [some natural cause] [or] some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such [loss] [injury] [or] [damage].

Fla. Std. Jury Instr. (Civ.) 5.1(b). The Note on Use accompanying instruction 5.1 indicates that instruction 5.1(a), incorporating the "but for" test, "is to be given in all cases." Note on Use, Fla. Std. Jury Instr. 5.1. Furthermore, instruction 5.1(b) is to be given "when the court considers it necessary," and "does not set forth any additional standard for the jury to consider in determining whether negligence was a legal cause of damage but only negates the idea that a defendant is excused from the

consequences of his negligence by reason of some other cause concurring in time and contributing to the same damage." *Id.*

As Guinn notes in her response to the motion, the concurring cause instruction has been mandated in cases where the facts supported a theory that the defendant's negligence acted only in combination with other factors to cause an injury. *See Hart v. Stern,* 824 So.2d 927, 930 (Fla. 5th DCA 2002) ("[I]n medical malpractice cases, concurrent causes occur when the injury is caused by the negligence of a health care provider *acting upon and combined with* the plaintiff's pre-existing physical condition.") (emphasis added); *Thomason v. Gordon,* 782 So.2d 896, 898 (Fla. 5th DCA 2001) (accident victim entitled to concurring cause instruction where evidence showed car accident "acted in combination with" pre-existing back condition to cause injury); *Esancy v. Hodges,* 727 So.2d 308, 309 (Fla. 2d DCA 1999) (injured passenger in rear-ended vehicle entitled to concurring cause instruction where there was evidence that car accident "combined with" passenger's pre-existing health condition to cause injury); *Zigman v. Cline,* 664 So.2d 968, 969 (Fla. 4th DCA 1995) (mandating the concurring cause instruction where an expert witness opined that two concurring causes, neither of which could be considered a sole cause, "conjoined in a 'constellation' of circumstances" leading to the plaintiff's injury). Indeed, the Court notes that these "pre-existing condition" cases raise some question about the *Stahl* court's proclamation that the substantial factor test applies only where each of the concurring causes alone could have caused the injury.

Court is confident that the forms of instructions recommended by the Committee [on Standard Jury Instructions] state as accurately as a group of experienced lawyers and judges could state the law of Florida in simple understandable language." *In re Standard*

*Jury Instructions,* 198 So.2d 319, 319 (Fla. 1967). The Florida Supreme Court periodically issues opinions adopting revisions to the instructions that are recommended by the Supreme Court Committee on Standard Jury Instructions.

■ After careful analysis of Florida's case law and standard jury instructions regarding causation, the Court concludes that Florida's concurring cause rules are, at best, unsettled. In particular, it is unclear whether, as *Stahl* states, the "substantial factor" test applies "only in those concurring cause cases where each of the said concurring causes could have *alone* produced the plaintiff's injury," 438 So.2d at 19 (emphasis added), or whether, as Florida Standard Jury Instruction 5.1(b) and the preexisting condition cases cited above can be read to suggest, causation is satisfied where the plaintiff establishes that the defendant's negligence substantially contributed to the plaintiff's injury, even though such negligence was one of perhaps many concurring causes that *acted in combination* to cause the injury. Ultimately, however, the lack of clarity in the law does not hinder the Court's decision in this case, as the record does not create a triable issue under either of these two tests. Indeed, the testimony of Guinn's specific causation expert, Dr. Marks, as elicited through her expert report and subsequent declaration, at her deposition, and at the *Daubert* hearing, confirms that there is no evidence in the record from which a reasonable juror could conclude that Seroquel contributed substantially to producing Guinn's injury.

First, Dr. Marks testified at deposition and in her expert report that she believes that Seroquel ultimately caused Guinn's diabetes by causing her to gain a substantial amount of weight.[28] At the *Daubert* hearing, however, she was unable to identify any mechanism by which Seroquel causes weight gain and, further, could not articulate even an average amount of weight gain that could be attributed to Seroquel.[29]

Furthermore, although Dr. Marks stated that Seroquel was a substantial factor in both Guinn's significant weight gain and her development of diabetes,[30] the actual substance of her opinions demonstrates that she has no scientific basis for such a statement. For example, she admitted at the *Daubert* hearing that she knew of no method to determine whether Guinn's significant weight gain during the time she was taking Seroquel was actually caused by Seroquel "as opposed to being just a normal weight gain and weight-loss cycle that Ms. Guinn has experienced over a long period of her life."[31] She also agreed that "[i]f someone has a major weight gain before taking Seroquel," as Guinn did, she could not know whether the weight gain on Seroquel actually had anything to do with the Seroquel[32] and further stated that "the point in time where [Guinn] developed diabetes could have been related to the addition of Seroquel" but it was "hard to know for sure."[33]

**28.** *See* Expert Report of Jennifer B. Marks, M.D., Ex. 8 to Doc. 1160, *In re Seroquel Prods. Liab. Litig.*, Case No. 6:06–md–1769–Orl–22DAB, at 6 (concluding that Guinn "basically gained 40 pounds over 5 years on [S]eroquel"); Marks Dep. 125:15–126:1 (admitting that evidence that Seroquel causes diabetes through a direct effect on the body has not been demonstrated to a reasonable degree of medical certainty and, further, that the only mechanism actually discussed in her report is weight gain).

**29.** Daubert Hr'g Tr. 167, Jan. 15, 2009, Doc. 1216, *In re Seroquel Prods. Liab. Litig.*, Case No. 6:06–md–1769–Orl–22DAB.

**30.** Marks Decl., Ex. 32 to Doc. 1160, *In re Seroquel Prods. Liab. Litig.*, Case No. 6:06–md–1769–Orl–22DAB, at 9; Daubert Hr'g Tr. 144.

**31.** Daubert Hr'g Tr. 195.

**32.** *Id.* at 178.

**33.** *Id.* at 226.

Dr. Marks also testified that Guinn had numerous pre-existing health conditions that could equally have contributed to her weight gain during the time she was on Seroquel,[34] and that Guinn had numerous risk factors for diabetes.[35] However, Dr. Marks admitted that she made no attempt to quantify the relative contribution of these other factors to Guinn's ultimate injury [36] because "it is not possible or practical" to do so.[37] In fact, Dr. Marks testified that she simply did not know whether it was the Seroquel or Guinn's other health conditions that caused her to gain weight while she was taking the drug.[38]

Additionally, when questioned by Guinn's attorney at the *Daubert* hearing as to whether she could conclude that but for Guinn's ingestion of Seroquel and the weight gain accompanying it, she would never have developed diabetes, Dr. Marks said she could not draw that conclusion "because if you take the Seroquel away, I mean, you don't know what the weight gain would have been." [39] Indeed, Dr. Marks testified that Guinn's pre-existing health conditions *alone* could have caused her to develop diabetes [40] and that it was more likely than not, to a reasonable degree of medical probability, that Guinn would have developed diabetes whether or not she ever took Seroquel.[41]

In all, Dr. Marks' testimony neither establishes a genuine issue of material fact with respect to whether Guinn's ingestion of Seroquel was a specific cause of her diabetes, nor sets forth a reliable opinion upon which a jury could make an informed factual determination. At best, Dr. Marks could only speculate as to whether Seroquel actually contributed to Guinn's weight gain during the time she was taking the drug. As the Supreme Court of Florida held in *Gooding v. University Hosp. Bldg., Inc.,* 445 So.2d 1015 (Fla.1984), "[a] mere possibility of [ ] causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* at 1018 (quoting *Prosser, Law of Torts* § 41 (4th ed. 1971)). Therefore, because Guinn has not established a triable issue with regard to specific medical causation, and each of Guinn's claims is fundamentally premised on a causal connection between her Seroquel ingestion and her diabetes, AstraZeneca is entitled to summary judgment as to all claims set forth in the complaint.

The Court stresses that its ruling herein is strictly confined to the application of Florida law to the specific facts of Ms.

**34.** Marks Dep. 293:23–294:2 (agreeing that Guinn's weight gain "could" be attributable to "taking in more calories than she was burning"), 294:18–21 (acknowledging that there are "other things in Ms. Guinn's life that could cause weight gain besides Seroquel"), 297:21–25 (agreeing that Guinn's sedentary lifestyle "could" alone explain Guinn's significant weight gain); Daubert Hr'g Tr. 178 (agreeing that "in Ms. Guinn's life, there are many other things that cause weight gain besides Seroquel").

**35.** Marks Dep. 266:21–267:1 (acknowledging that Guinn's risk factors included obesity, hypertension, hyperlipidemia, family history, age, sedentary lifestyle and prediabetes); Daubert Hr'g Tr. 145 (opining that Guinn was

"a person who certainly had a lot of risk factors" for diabetes).

**36.** Marks Dep. 294:13–25; Daubert Hr'g Tr. 188.

**37.** Marks Decl. at 8.

**38.** Daubert Hr'g Tr. 178–79.

**39.** *Id.* at 148.

**40.** Marks Dep. 269:2–5; Daubert Hr'g Tr. 208.

**41.** Marks Dep. 247:16–20; Daubert Hr'g Tr. 222.

Guinn's case. Other cases presenting potentially distinguishable facts,[42] or which arise under the laws of other states,[43] may fare differently. Accordingly, this opinion is in no way intended to prevent a full and fair evaluation of the specific facts of each of the other cases involved in this litigation.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. AstraZeneca's Motion for Summary Judgment (Doc. 12), filed under seal on November 3, 2008, is **GRANTED**.

2. The Clerk shall enter a final judgment providing that the Plaintiff, Linda Guinn, shall take nothing on her claims against the Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca AB, AstraZeneca LP, and AstraZeneca PLC, and that the Defendants shall recover their costs of action.

3. The Clerk is directed to **CLOSE** the file in Case No. 6:07–cv–10291–Orl–22DAB.

---

**42.** E.g., cases in which the drug was prescribed off-label.

**43.** The Court has not reviewed the law of causation applicable in any other state, and, as such, cannot predict the fate of any cases to which the laws of states other than Florida apply.